**POWER SYSTEMS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–2564.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1979.

Decided July 18, 1979.

Matthew R. McArthur, Chicago, Ill., for petitioner.

Robert E. Allen, N. L. R. B., Washington, D. C., for respondent.

Before TONE and BAUER, Circuit Judges, and WILL, Senior District Judge.*

TONE, Circuit Judge.

This is a review of an order in which the National Labor Relations Board found that Power Systems, Inc. committed an unfair labor practice by suing a former employee in a state court for having maliciously filed a baseless charge against Power Systems with the Board. 239 N.L.R.B. No. 56 (November 24, 1978). We deny enforcement of the order.

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

In November 1974 Power Systems employed John Sanford as one of four journeyman millwrights to perform work on a job undertaken by the company. Sanford's union designated him as its steward on the job. Less than two weeks after he began his employment Sanford was discharged for cause. He has not been reemployed by the company.

Shortly after his discharge Sanford filed an unfair labor practice charge against Power Systems with the Board's office in Peoria, Illinois, alleging that he had been discharged "because of his union activity regarding safety radiation dosage, contract improper tools." After an investigation of the charge the Board's officer-in-charge in Peoria advised Sanford by a letter dated January 7, 1975, that his charge had been investigated and that it did not appear that further proceedings on the charge were warranted. The letter stated that although Sanford was job steward for his union and engaged in making complaints to the employer in pursuit of his duties as steward, he had failed to invoke the formal grievance machinery. Also, "during the short period of [Sanford's] employment [he] had numerous encounters and confrontations with [his] fellow employees, representatives of . . . [his] own union, as well as employees and supervisors working for other employers on the site." Some of Sanford's statements and actions, the letter noted, were "inconsistent with [his] own union representative's position." In addition, it was noted that the employer had concluded that Sanford's "non-protected actions such as stopping work for lengthy periods in order to complain about tools were contributing to" the problem of the job not progressing according to schedule. It was stated that no evidence had been found that the employer was antiunion or that Sanford's discharge was related to his protected activities. In addition, it was

noted that arbitration was available to determine the propriety of the discharge.

Sanford appealed the officer-in-charge's decision to the Board's General Counsel and in so doing asserted charges against his union and the Board itself.[1] The General Counsel remanded the case to the Board's Peoria office with instructions to obtain sworn affidavits from Power Systems' officials as to the reasons for Sanford's discharge. After these affidavits were supplied, the General Counsel denied Sanford's appeal in May 1975 "substantially for the reasons" given by the local office at the outset.

Some two years later, in April 1977, Sanford filed charges against Power Systems with the Occupational Safety and Health Administration of the United States Department of Labor, alleging that he had been discharged by Power Systems in retaliation for safety complaints he had made while in the employ of the company. The Labor Department investigated Sanford's charges, concluded that they were without merit, and dismissed them. Sanford did not appeal this dismissal.

Power Systems then made a request under the Freedom of Information Act to the Board's Peoria office for information about charges Sanford had filed with the Board. As a result of this and further investigation by Power Systems, it was discovered that he had filed some 43 separate unfair labor practice cases with that office against various employers and labor organizations. Of these, 25 had ultimately been withdrawn, 14 had been dismissed by the Board, three had resulted in settlements, and one had resulted in a Board order. It also appeared that the Board's Peoria office had established a special procedure for dealing with Sanford's complaints and advised him thereof in a letter which stated as follows:

> [B]ecause of the numerous charges you have filed, the vast majority of which

---

1. Sanford accused the International Brotherhood of Carpenters, Local 1092, and a Board employee, among others, of bad faith and bias. In addition he asserted that he had evidence showing that "stewards physically attacked supervision [sic] and neither the companies, un-

ions or Com. Ed. ever take any action . . .," and that an unidentified "Business Rep. discharged firearms on the jobsite to intimidate companies." Even if true, these allegations provided no support for the charge against Power Systems for wrongful discharge.

were non-meritorious, it was determined that for reasons of efficiency you would be required to submit *prima facie* evidence at the Subregional Office in support of your charge before a field investigation takes place. This means, at a minimum, that you present yourself at our office and give a sworn affidavit with respect to evidence within your personal knowledge. Further, you are to proffer to the Investigating Agent the names, addresses and telephone numbers of your witnesses and a brief account of what their testimony will be.

These special provisions were specifically approved by the office of the Board's General Counsel in Washington.

After obtaining the above additional information, Power Systems inquired of the Board whether the filing of a civil suit against Sanford would in the Board's opinion interfere with his rights under the Act. Board representatives in both Peoria and Washington declined to express an opinion on the subject but referred the company to two published Board decisions, one of which states that the Act is not necessarily violated by the commencement of a civil action in court, *Clyde Taylor Co.*, 127 N.L.R.B. 103 (1960), and the other holding that a union committed an unfair labor practice by fining a member for filing Board charges without first exhausting the union's internal grievance procedures, *Local 138, I.U.O.E. (Chas. Skura)*, 148 N.L.R.B. 679 (1964).

In September 1977, Power Systems filed a civil suit against Sanford in an Illinois state court alleging that he had initiated proceedings before the NLRB and OSHA without probable cause and for the purpose of harassment and not for the primary purpose of correcting employment practices or safety practices. Damages and injunctive relief were initially sought, but the complaint was later amended to withdraw the request for injunctive relief and to limit the damages requested to litigation expenses incurred in defending the administrative charges.

The Board then filed the instant complaint. The company and the General Counsel waived hearing before an administrative law judge and submitted the case directly to the Board for decision.

In its decision, the Board did not reject the principle announced in *Clyde Taylor, supra,* 127 N.L.R.B. at 109, and followed in many subsequent decisions that the filing of a civil complaint by an employer or labor organization against an employee or member does not violate the Act.[2] Rather, the Board found that Power Systems had filed its complaint to further an unlawful objective, which brought it within a recognized exception to the *Clyde Taylor* rule.[3] According to the Board, Power Systems

> had no reasonable basis for the filing of its lawsuit, . . . the lawsuit had as its purpose the unlawful objective of penalizing Sanford for filing a charge with the Board, and thus, depriving him of, and discouraging employees from seeking, access to the Board's processes. Therefore, *Clyde Taylor* does not preclude us from finding an unfair labor practice

**2.** *E.g., S. E. Nichols Marcy Corp.,* 229 N.L.R.B. 75, 75 (1977) ("[T]here is longstanding Board precedent consistently holding that the filing of a civil suit, as opposed to the threat to file a civil suit, does not constitute an unfair labor practice"), *Retail Clerks Union Local 770 (Hughes Markets, Inc.),* 218 N.L.R.B. 680, 683 (1975) ("Since the *[Clyde]* Taylor case, the Board has consistently held that the filing of a civil suit cannot be found to be an unfair labor practice," quoting from *United Aircraft Corp. (Pratt and Whitney Division),* 192 N.L.R.B. 382, 384 (1971)); *Los Angeles Building & Construction Trades Council, AFL–CIO (Noble Electric),* 217 N.L.R.B. 946, 948 (1975); *Bergman v. NLRB,* 577 F.2d 100 (9th Cir. 1978). *See also Lodges 743 and 1746, International Association*

*of Machinists and Aerospace Workers v. United Aircraft Corp.,* 534 F.2d 422, 463–465 (2d Cir. 1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976) (sustaining the NLRB's finding on this point in *United Aircraft, supra* ).

**3.** *See United Stanford Employees, Local 680 (The Leland Stanford Junior University),* 232 N.L.R.B. 326, 330–331 (1977) (adopting ALJ's decision); *Television Wisconsin, Inc.,* 224 N.L.R.B. 722, 722 n.2, 778–780 (1976) (adopting ALJ's decision as modified). *See also International Organization of Masters, Mates, and Pilots, AFL–CIO v. NLRB,* 188 U.S.App.D.C. 15, 25–26, 575 F.2d 896, 906–907 (1978).

against the Respondent for the filing of its civil lawsuit.

Accordingly, the company was ordered to withdraw its civil action insofar as it related to Sanford's unfair labor practice charge filed with the Board and to reimburse Sanford for

all legal expenses he has incurred in the defense of that portion of the complaint and amended complaint . . . in which Respondent sought to recover the legal expenses it incurred in defense of a charge filed by Sanford with the National Labor Relations Board.[4]

We begin, as did the Board, with the premise that under the longstanding rule of *Clyde Taylor* and its progeny it is not an unfair labor practice for an employer, acting in good faith and not in furtherance of an unlawful objective, to prosecute a civil action against a former employee for filing a charge with the Board maliciously and without probable cause. The Board found that in this case the employer lacked a reasonable basis for its civil action and therefore an improper motive should be inferred. We see no basis in the record for this finding of the Board and therefore set it aside as not supported by substantial evidence on the record as a whole. In reaching this conclusion, we have assumed without deciding that the Board may properly determine in the first instance, without waiting for the resolution of the state court suit, whether there is a reasonable basis for that suit.

We are unable to understand, however, how the Board could determine from the stipulated record before it that Power Systems had no reasonable basis for its suit against Sanford. All the indications we find point to a contrary conclusion. The facts relating to the apparently meritless charges Sanford filed with the Board and, two years after his discharge, with OSHA and his filing of numerous other unfounded charges against employers and unions establish a reasonable basis for an inference that his motive in filing the Board charge against Power Systems was vindictive and malicious.[5] The Board's own officer-in-charge recognized the baselessness and irresponsibility of the charge in rejecting it and the Board's General Counsel approved this evaluation. The Board recognized Sanford's proclivity for filing baseless charges when, with the approval of its General Counsel, it established a special procedure for processing Sanford's complaints. It thus appears that the Board's own officials drew inferences concerning Sanford's motivation very similar to the one the Board now says it was unreasonable for Power Systems to draw.

As we have noted, from its determination that Power Systems lacked a reasonable basis for its suit against Sanford the Board inferred that the suit "had as its purpose the unlawful objective of penalizing Sanford for filing a charge with the Board, and

4. In a footnote the Board stated:
[S]ince we have found that the Respondent had no reasonable basis for bringing its lawsuit against Sanford, we deem it unnecessary to reach the issues raised by the Supreme Court's recent decision in *Sears, Roebuck & Co. v. San Diego County District of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978).
The company had argued that its lawsuit was permissible under the *Sears* decision because it was concerned only with Sanford's motive in filing his charge with the Board and not with the legal merits of Sanford's charge and because the issue of his motive could not have been raised before the Board. Although the Board said it was unnecessary to reach this contention, it appears to have done so *sub silentio* by its reaffirmation of the *Clyde Taylor*

principle and its decision of this case on the assumption that that principle remains viable.

5. The Board's refusal to issue a complaint on Sanford's charge of course did not establish that he had filed the charge in bad faith. Likewise, OSHA's similar disposition of the complaint Sanford filed with that agency did not in itself establish bad faith. But the filing of a stale charge, based on already discredited assertions, against a company with whom Sanford had been briefly employed two years earlier and not since, is relevant to the question of his state of mind and attitude toward the company, when considered with the other facts of record. Also the nature of the facts asserted by Sanford to support his charge filed with the Board hardly suggests a firm, or even a reasonable, basis for thinking that his discharge was because of protected activity.

thus, depriving him of, and discouraging employees from seeking access to the Board's process." Since the proposition from which the Board drew the inference is unsupported, the inference cannot stand.

Nor is there any other basis in the record for the Board's finding as to Power Systems' motivation. The record in fact contains strong indications of a proper motivation on Power Systems' part and nothing to the contrary. The company did not act until its former employee, two years after he was discharged for cause following the very brief period of his employment, had filed charges with OSHA with respect to some of the same matters he had presented to the Board, OSHA had found the charges meritless, and the Board itself had provided powerful evidence bearing on Sanford's purpose and motive. Furthermore, before proceeding, Power Systems inquired of the Board whether the contemplated suit would, in the Board's view, violate the Act. The answer was not affirmative, although it was inconclusive.

The only fact to which the Board points as indicating that the civil suit was an effort to deprive Sanford of his right to resort in good faith to the Board was the inclusion of a prayer for injunctive relief in the original complaint in the state court. That prayer was withdrawn upon the filing of the amended complaint. We are unable to find in this fact, when it is examined in the light cast by the whole record, a basis for finding an improper motive on the part of the company.

Our holding in this case is narrow: the Board's finding that the company filed its civil complaint without a reasonable basis and for an improper purpose is not supported by substantial evidence on the record as a whole. We intimate no view on the scope of the Board's power to determine, in circumstances other than those presented here, that the filing of a civil action based upon the defendant's charge filed with the Board is an unfair labor practice. We recognize that civil actions for malicious prosecution carry with them a potential for chilling employee complaints to the Board and

that the Board may, in a proper case, act to curb such conduct. This is not such a case.

Enforcement Denied.