The UNITED CREDIT BUREAU OF AMERICA, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 79–1419.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1980.

Decided March 10, 1981.

Rehearing Denied April 24, 1981.

---

Edward L. Blanton, Jr., Towson, Md. (Jay V. Strong, Jr., Towson, Md., Douglas W. Grinnell, San Diego, Cal., on brief), for petitioner.

Richard A. Cohen, N. L. R. B., Washington, D. C. (Norton J. Come, Acting Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Peter M. Bern-Stein, N. L. R. B., Washington, D. C., on brief), for respondent.

Before WIDENER and SPROUSE, Circuit Judges, and HADEN, District Judge.*

HADEN, District Judge:

The employer, United Credit Bureau of America, Inc., (United) petitions the Court to review and set aside an order of the National Labor Relations Board (Board); the Board cross petitions for enforcement. For reasons that follow, we grant enforcement.

At issue are the Board's procedures and its findings that United committed unfair labor practices in violation of Section 8(a)(1) of the National Labor Relations Act by discharging employee Tonia Anderson for engaging in protected activities and in further violation of Sections 8(a)(4) and (1) of the Act by its retaliatory filing of a common law civil action against employee An-

---

* Charles H. Haden II, United States District Judge, Northern and Southern Districts of West Virginia, at Parkersburg, sitting by designation.

derson for her part in filing charges with the Board.[1]

### I. Anderson's Discharge

Anderson was hired in April, 1977, as a probationary employee for 120 days, to be trained in United's business of compiling and transmitting credit information for commercial accounts. She was awarded a ten cent per hour wage increase on May 31, 1977, and her supervisors initially considered her performance to be good.

Prior to her discharge, Anderson shared lunch periods with other employees at United and engaged in conversations concerning desired improvements in working conditions. Following these discussions, Anderson made an appointment to meet with a representative of Amalgamated Local Union No. 1231, affiliated with Laborers International Union of North America. Anderson subsequently decided to forego the meeting with the Union representative and spoke directly with Patadora Hedrick, a second vice president for United and Anderson's immediate supervisor. On behalf of herself and others who were reportedly reluctant to come forward, Anderson informed Hedrick of desires for the following improved benefits: A longer lunch period, paid maternity leave, sick leave and time off for perfect attendance. Hedrick told Anderson the requests would be passed along to the management staff.

Hedrick then informed Personnel Director Marie Welch and Executive Vice President Jack Sauber of Anderson's statements. These supervisors discussed what could be done "to save the employee" and so scheduled a meeting with Anderson. At the meeting held the following day, Sauber quizzed Anderson about her demands, explained the benefits United already provided employees, and stated why it could not provide others. After further discussion, including unsuccessful inquiry as to the identity of the other employees requesting improvements, Sauber informed Anderson that she was terminated because her attitude toward her job had changed and, therefore, she would be unable to perform her work satisfactorily. Anderson then was escorted from the building by Welch, who opined that Anderson was a good employee and who expressed a willingness to provide a favorable employment reference as to Anderson's abilities and performance.

### II. United's Civil Action Against Anderson

Based upon Anderson's discharge, an affiliate of the Laborers International Union of North America, Amalgamated Local Union No. 1231, filed a charge with the Board, which issued a complaint on December 16, 1977, against United alleging violations of Sections 8(a)(3) and (1) of the Act.[2] (Case No. 5–CA–8985, discharge case). On March 21, 1978, United filed a civil action against Anderson in the Superior Court of Baltimore City.[3] A previously noticed hearing

---

1. 29 U.S.C. § 158(a)(1), (4).

2. 29 U.S.C. § 158(a)(1), (3).

3. The relevant contents of the complaint or declaration are as follows:

 "The Plaintiff, THE UNITED CREDIT BUREAU OF AMERICA, INC., a body corporate of the State of Maryland, by its attorneys, Edward L. Blanton, Jr. and Jay V. Strong, Jr., brings this suit against the Defendant, TONIA A. ANDERSON, and as its cause of action states:

 For that the Defendant, TONIA A. ANDERSON, on or about 11 April 1977, falsely represented to the Plaintiff her intention to enter into a long-term relationship of employment with the Plaintiff in a capacity for which she was not, by training or experience, suited, that the Defendant knew, at the time she made the foregoing representation, that it

 was false; that in fact she intended to work no longer than necessary to obtain the benefits of the Plaintiff's training program and secure a position as a *bona fide* employee of the Plaintiff and thereafter to provoke her discharge under circumstances which would permit her to file an unfair labor practice charge *against the Plaintiff in the expectation* that the Plaintiff would elect, as a matter of expediency, to accept an offer of settlement; that such settlement offer would, under standard procedures well known to the Defendant, be made on her behalf by the National Labor Relations Board, pursuant to which she would be offered reinstatement to her former position and payment of full wages for the period between the date of her discharge and the date Plaintiff accepted the offer of settlement, the effect of which would have been to secure for the Defendant a

in the discharge case was held on March 22 by an Administrative Law Judge (ALJ). Subsequent to the Board hearing, Anderson was served with the process from the state civil action, and she then filed a second charge with the Board, which issued a complaint against United on May 24 alleging violations of Sections 8(a)(4) and (1) (Case No. 5–CA–9344). On May 31, the general counsel moved to reopen the hearing in the discharge case and to consolidate the two complaints. On June 5, United was ordered to show cause why the general counsel's motion should not be granted, and on June 6, it filed an answer opposing that motion. After considering United's response in opposition, the ALJ issued an order by telegraph on June 12, granting the general counsel's motion. On the following day, the general counsel filed a motion for judgment on the pleadings or, alternatively, for summary judgment.

The ALJ conducted the hearing on June 23, 1978, where United renewed its objections to the consolidation. The general counsel's representative submitted the com-

plaint from the state civil action into evidence and informed the ALJ that the general counsel would present no further evidence with respect to the 8(a)(4) and (1) charges based on the retaliatory lawsuit. United's counsel initially told the ALJ that United wished to present evidence with respect to the latter charge, but then decided against presenting evidence, stating "If the party with the burden of proof is not going to present any evidence in the proceedings, I don't think that I will present any evidence in rebuttal to the nonevidence that he's presented . . . ." App. 104. Counsel for United admitted that United filed the lawsuit against Anderson, but denied that it constituted an unfair labor practice, and orally moved for judgment on the pleadings in United's favor. App. 105. Without expressing an opinion on the merits, the ALJ suggested to United's counsel that the submission into evidence of the state court complaint might suffice to overcome a judgment motion, and that United would be well advised to produce rebuttal evidence. Nevertheless, United's counsel did not sub-

"paid vacation" to which she was not entitled, but which she would receive if her scheme were successful; that the false representation of her intentions was made to persuade the Plaintiff to pay her while she participated in its training program and to expend its money to provide instruction for her, which expenditures the Plaintiff made in the expectation that she intended to work for Plaintiff for a sufficient period to compensate Plaintiff for the time and money to train her; that the Plaintiff relied upon her representations with full belief in their truth; and had the Plaintiff not believed that the Defendant did not intend to so work, the Plaintiff would not have agreed to expend its time and money to train her; that the Plaintiff believed the Defendant's representations and had the right to rely upon her representations with full belief in their truth; and had the Plaintiff not believed that the Defendant did not intend to so work, the Plaintiff would not have agreed to expend its time and money to train her; that the Plaintiff believed the Defendant's representations to be truthful, did hire the Defendant and provide training for her, at great cost and expense to the Plaintiff and, in addition, paid the Defendant a full-time salary during the period she was being trained; that within ninety (90) days after her training period had been completed, the Defendant deliberately provoked an incident which she knew would lead to her dismissal as an em-

ployee of Plaintiff by making unreasonable demands upon the Plaintiff to change the conditions under which she worked, which conditions were explained to her prior to her accepting employment with the Plaintiff and to which condition she implicitly agreed by accepting employment; that she was, as a direct consequence of the incident, dismissed, and she immediately thereafter filed a complaint of unfair labor practice against the Plaintiff; that an offer in settlement was immediately made after a perfunctory investigation by the National Labor Relations Board, that, if the Plaintiff had accepted such offer, it would have been required to reinstate the Defendant and pay her back wages between the date of her dismissal and the date of her reinstatement; that the damages sustained by the Plaintiff as a result of the fraud perpetrated by the Defendant consist of wages paid to the Defendant by the Plaintiff during the training period, the *pro rata* cost of operating Plaintiff's training department during the period in which the Defendant was being trained by the Plaintiff and the cost of defending the charge of unfair labor practice filed by the Defendant against the Plaintiff; WHEREFORE, the Plaintiff claims the sum of TEN THOUSAND ($10,000.00) DOLLARS." App. 9.

mit evidence, nor request a continuance but rather argued the merits of the actions, as did counsel for the Board. The parties subsequently submitted briefs in support of their positions.

### III. *The Board's Decision*

The ALJ issued a decision in March, 1979, which was adopted *in toto* by the Board. 242 NLRB No. 138 (June 8, 1979). The Board found that "Anderson engaged in protected concerted activity, that [United] knew of that activity, and that Anderson was discharged because of it." The Board noted that, while United contended the discharge was because of Anderson's changed attitude the only manifestation of changed attitude was Anderson's request for improved benefits for herself and her fellow employees. Recognizing that United's subjective intent was not determinative as to whether Section 8(a)(1) had been violated, the ALJ concluded that United's conduct reasonably could be viewed as interfering with the free exercise of rights under the Act, and, therefore, violated Section 8(a)(1).[4]

The Board also rejected United's defense that Anderson was discharged because management determined she had requested improvements only in order to provoke her discharge, so that she could file a charge with the Board which ultimately would be settled by United, all with the ultimate goal of obtaining a "paid vacation" at United's expense. In light of the evidence offered, the Board concluded "the premise of this defense is pure speculation." App. 129.

The Board further found that the evidence did not establish awareness by United of any union activity or involvement by any of its employees and, therefore, concluded that Section 8(a)(3) had not been violated by Anderson's discharge.

The Board additionally concluded that United violated Sections 8(a)(4) and (1) by filing the state court civil action against Anderson. While recognizing that the complaint sounded in fraud, the Board noted

the action was premised upon Anderson's charge filed with the Board. The Board found Anderson had probable cause for filing that charge and that no evidence had been offered by United to support its claim that Anderson perpetrated the alleged scheme to use the Board's processes for her own nefarious reasons. United's resort to private litigation was found to have violated Section 8(a)(4) and (1) because the "civil action was filed purely for purposes of retaliation to punish Anderson for seeking redress for her discharge from the Board and to discourage other employees from ever emulating Anderson in seeking to enforce their rights." App. 131.

### IV. *Disposition*

In the Petition United contends that: (1) its rights to procedural due process were violated because it received insufficient notice of the matters to be considered at the June 23, 1978, hearing; and (2) the Board erred as a matter of law in finding that United committed an unfair labor practice by filing the state civil action against Anderson. United urges this Court to remand the case and stay the proceedings in the unfair labor practice charge pending disposition of the state civil action. All of United's arguments on appeal are addressed to its procedural due process claim and to the Board's findings on the state court civil action case; United does not urge in its brief here that the Board's finding that Anderson's discharge was unlawful is erroneous. The Board contends that its findings are supported by substantial evidence and must be affirmed.

■ A. *The Discharge Case.* Although not directly raised by United before this Court, we have reviewed the Board's finding that United's discharge of Anderson violated Section 8(a)(1). We conclude that finding is supported by substantial evidence on the entire record. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). All the record evidence

---

4. Indeed, the Board found the evidence went beyond this: "It is impossible to escape the conclusion that Sauber, Hedrick and Welch intended specifically that Anderson's discharge interfered with employee rights." App. 128.

forcefully demonstrates that Anderson, a good worker in United's perception, was discharged because she engaged in protected activity. Likewise, it is apparent that United's action would have the likely effect of restraining or inhibiting other United employees from exercising rights protected under Section 7 of the Act.[5] See generally, *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); R. Gorman, *Basic Text on Labor Law*, 132–133 (1976).

B. *United's Procedural Due Process Claim.* United argues its rights to procedural due process were violated because the ALJ failed to notify it of the specific matters to be considered at the June 23, 1978, hearing. The hearing on the second unfair labor practice charge originally had been scheduled for June 27, as noticed by the complaint issued on May 24. As noted above, the general counsel filed his motion for judgment on the pleadings, or alternatively, summary judgment, in the second unfair labor case on June 20; United received a copy of this motion on June 21, and on June 22, United received a telegraphic order from the ALJ setting the hearing in the consolidated cases for June 23.

 We conclude that United was not denied due process. Although the notice scheduling the June 23 hearing certainly may be considered ambiguous when viewed in its procedural context, United's actions at the hearing demonstrate that it suffered no resulting prejudice. First, United presented no evidence at the hearing, because, as the record manifestly demonstrates, United's counsel was of the opinion that the general counsel had failed to carry his burden of proof in the second unfair labor practice case. This was a tactical

decision by United's counsel, and was not the result of misreliance upon a vague notice. Moreover, United asserted no claim of inadequate notice or prejudice at the hearing. It is clear that United was afforded a full and fair opportunity to defend the charges and it is too late now to contend otherwise.[6]

C. *The 8(a)(4) and (1) Charges and the State Court Civil Action.* In determining whether the commencement of a court action by an employer against an employee who has charged an unfair labor practice may constitute an unfair labor practice by the employer, our discussion must begin with reference to the "Clyde Taylor" doctrine. *Clyde Taylor, d/b/a Clyde Taylor Co.*, 127 NLRB 103 (1960). In that case, the Board recognized that Section 8(a)(1) may be violated when an employer threatens to file an action in the civil courts "as a tactic calculated to restrain employees in the exercise of rights guaranteed by the Act." 127 NLRB at 108. There, the employer was held to have violated the act by threatening to file a libel action in state court against employees as retaliation for their filing charges with the Board. Conversely, the Board refused to find that the same employer violated Section 8(a)(1) by also obtaining a state court injunction against employees engaged in peaceful picketing, reasoning as follows:

> "The Board should accommodate its enforcement of the Act to the right of all persons to litigate their claims in court, rather than condemn the exercise of such right as an unfair labor practice." 127 NLRB 109.

In the application of this broad principle to actions filed by employers and unions alike and involving a wide variety of civil

---

**5.** 29 U.S.C. § 157.

**6.** Parenthetically, we note that United's contention that it intended ·subsequently to present evidence is of no import. The ALJ adequately apprised counsel of the posture of the case at the June 23 hearing. It is clear that United offered no testimony for the reasons stated above, and not because it was unprepared.

Moreover, if United was not prepared to present evidence at the June 23 hearing because it had been misinformed by a vague and untimely notice, then counsel for United should have requested a continuance. Considering the procedural history, a motion for continuance to gather and present rebuttal evidence would have been well founded.

issues related to labor management matters, the Board has demonstrated reluctance to find that parties resorting to the civil courts thereby violate the Act.[7]

On other occasions, the Board has found an exception to the broad policy of *Clyde Taylor* where a civil lawsuit actually was brought for the purpose of accomplishing an unlawful objective [8] or was deemed retaliatory in nature.[9]

*Power Systems, Inc.*, 239 NLRB No. 56 (1978) *rev'd.*, 601 F.2d 936 (7th Cir. 1979) was the first case in which the Board found an employer to have violated the Act by actually filing a civil lawsuit against an employee.[10] There, the Board found the employer violated Section 8(a)(1) and (4) of the Act by filing a state court action against its former employee, Sanford, alleging Sanford had filed charges with the Board which were malicious, unfounded and brought for the purpose of harassing the employer. Finding that the employer had no reasonable basis for its lawsuit, the Board concluded that the suit was filed to accomplish an unlawful objective: i. e., to penalize Sanford for filing the charge and discouraging other employees from similarly seeking redress.

On appeal, the Court denied enforcement. In the Court's view, the record evidence overwhelmingly established that the employer indeed had a reasonable basis for filing the lawsuit. The unfair labor practice charge filed by its employee, Sanford, upon which the employer based its lawsuit, had been found by the general counsel to be without merit and the general counsel had declined to process the complaint. More significantly, the charging party had an established record of filing baseless and irresponsible charges [11] so extensive that the Board's regional office had instituted a special procedure for handling charges filed by him.

The Court in *Power Systems*, therefore, simply held that the Board's findings were not supported by substantial evidence. Recognizing that its opinion did not address the legal parameters of the Board's power to find unfair labor practices in similar circumstances, the Court stated:

"We recognize that civil actions for malicious prosecution carry with them a potential for chilling employee complaints to the Board and that the Board may, in a proper case, act to curb such conduct." 601 F.2d 936, at 940.

We share this concern over the potential chilling effect of such lawsuits. Just as the National Labor Relations Act was enacted to establish the correlative rights of em-

---

7. For cases where no violation of the Act was found, see: *S. E. Nichols Marcy Corp.*, 229 NLRB 75 (1977); *Sullivan and Associates*, 230 NLRB No. 55 (1977); *Retail Clerks Union Local No. 770 (Hughes Markets, Inc.)*, 218 NLRB 680 (1975); *Los Angeles Building and Construction Trades Council, AFL–CIO (Noble Electric)*, 217 NLRB 946 (1975); *Frank Visceglia and Vincent Visceglia T/A Peddie Buildings*, 203 NLRB 265 (1973); *United Aircraft Corp. (Pratt and Whitney Division)*, 192 NLRB 382 (1971). See also: *Bergman v. NLRB*, 577 F.2d 100 (9th Cir. 1978); *Lodges 743 and 1746, etc. v. United Aircraft*, 534 F.2d 422, 463–465 (2nd Cir. 1975).

8. E. g., *United Stanford Employees, Local 680, Service Employees International Union (Leland Stanford Junior University)*, 232 NLRB 326 (1977); *Television Wisconsin*, 224 NLRB 722, 779–780 (1976); *International Organization of Masters, Mates and Pilots, AFL–CIO (Cove Tankers)*, 224 NLRB 1626 (1976), *aff'd.* 575 F.2d 896 (D.C.Cir.1978); *Power Systems, Inc.*, 239 NLRB No. 56 (1978), *rev'd.*, 601 F.2d 936 (7th Cir. 1979).

9. See *West Point Peperell, Inc.*, 200 NLRB 1031, 1040 (1972) (employer demanded union withdraw unfair labor practice charges or else face lawsuit for damages).

10. *United Stanford Employees, Television Wisconsin* and *Cove Tankers, supra*, fn. 5, each involved a lawsuit brought by a labor organization and, therefore, involved Section 8(b)(1)(A) of the Act.

11. Sanford had filed 43 separate unfair labor cases over the years against various employers and labor organizations. Of these, 25 had been withdrawn, 14 dismissed, three settled and one resulted in a Board order. 601 F.2d 936, at 937. All this strongly demonstrated the employer's justification for the civil lawsuit, and so the Board's inference of unlawful motive was discredited factually.

ployers and workers, so was the Board created by Congress to enforce the provisions of that Act. The Board, however, cannot institute enforcement proceedings on its own, but must instead rely upon aggrieved parties to file charges. Accordingly, enforcement of the Act is directly dependent upon the willingness of persons to file charges, testify and provide other evidence to the Board. See *Nash v. Florida Industrial Commission*, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438 (1967). Successful implementation of the Act thus requires that complete protection be given persons who, in good faith, file charges or testify. To this end Congress enacted Section 8(a)(4) which provides that it shall be an unfair labor practice for an employer "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under [the] Act." The Supreme Court has acknowledged the import of Section 8(a)(4) in the enforcement scheme of the Act. In *Nash v. Florida Industrial Commission, supra,* the Court stated:

"Congress has made it clear that it wishes all persons with information about [unfair labor] practices to be completely free from coercion against reporting them to the Board." *Id.* at 238, 88 S.Ct. at 365.

Likewise, in *NLRB v. Scrivener*, 405 U.S. 117, at 122, 92 S.Ct. 798, at 801, 31 L.Ed.2d 79 (1972) the Court stated: "This complete freedom [to provide information to the Board concerning unfair labor practices] is necessary . . . 'to prevent the Board's channels of information from being dried up by employer intimidation of prospective complainants and witnesses.'" quoting, *John Hancock Mutual Life Insurance Co. v. NLRB*, 191 F.2d 483, 485 (D.C.Cir.1951).

United argues that the evidence does not support the Board's finding, and that the Board, in effect, granted summary judgment, which was erroneous because of the factual conflict as to United's motive. We conclude that the Board's decision was not a de facto grant of summary judgment, but rather was a judgment on the merits. Accordingly, we have no occasion to construe conflicting inferences in favor of United, but rather our inquiry is whether the Board's findings were supported by substantial evidence on the whole record.

█ Initially, we note agreement with the Board's characterization of United's lawsuit as analogous to an action for abuse of process. Central to Anderson's fraudulent scheme, as alleged in United's declaration, was provocation of her discharge by engaging in arguably protected activities; discharge for other reasons would not have provided a springboard to the Board's processes; and ultimately Anderson's gain of a "paid vacation." Thus, by its own pleadings, United has inextricably wedded its fraud action to the operation of the Board's processes. United's action thereby had the potential for direct collision with the policy of Section 8(a)(4), and thus merited the close factual examination given it by the Board.

The Board's decision was based upon the testimony concerning Anderson's activities and discharge, and the declaration filed in the state court. This evidence amply supports the Board's finding that Anderson's original charge was meritorious, as previously discussed. Moreover, United did not adduce any evidence which would support its fraud theory. At the original hearing in the discharge case, counsel for United cross examined Anderson in an attempt to elicit facts to support the fraud theory. Boiled down, the only arguable basis of such a theory is: that Anderson was a college graduate working in a job requiring lesser skills (App. 69); that she was unhappy because United did not allow her time off on her wedding day (App. 77); and that she had exhibited a "bad attitude" in previous employment (App. 72).[12] At the reopened

12. Anderson quit working—or was terminated—from previous employment as a bill collector after she was assaulted by a customer and her employer refused to compensate for her torn clothing.

hearing on June 23, United declined to present direct evidence supporting its conspiracy theory, or that which would otherwise demonstrate that the civil action was filed for a lawful motive.

Inasmuch as the evidence provides no support for United's fraud theory, the facts are in stark contrast to those of *Power Systems.* There the sued employee had demonstrated a proclivity for filing meritless, harassing labor charges against his employer; here the single charge was meritorious.

United further argues that there is no evidence that Anderson's rights were interfered with, or that she was coerced given the fact that she was not served with process from the state court the day after the hearing in the discharge case. The Board rejected this contention and so do we. The immediate impact of defending the state court lawsuit most definitely serves to impose a punitive measure upon the charging employee. The violation of Section 8(a)(4) is thus clear. Likewise, the message to United's employees is clear: assertion of protected rights (rights found subsequently to be meritorious by the labor board) will subject you, as a United employee, to a retaliatory lawsuit and all the expense and trouble that goes with it. The violation of Section 8(a)(1) is thus clear. We conclude that substantial evidence supports the Board's finding that United's lawsuit filed against its charging employee, Tonia Anderson constituted violations of Sections 8(a)(4) and (1) of the Act.

D. *Preemption.* As a final contention, United argues that its state court cause of action is not preempted by federal labor jurisdiction under the rule of *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), and that it

should be allowed to choose and proceed in a forum of its choice rather than in one "predisposed to reject it" (Petitioner's brief 24) and in which it cannot obtain relief. The Board thought otherwise and ordered United to cease and desist from prosecuting its civil action against Anderson and withdraw its complaint. (App. 133, 134). Because of this aspect of the Board's order we are obliged to address the preemption issue.

Generally, prior law held that where activity subject to state regulation was "arguably protected" by Section 7, or "arguably prohibited" by Section 8, then preemption applied, and state jurisdiction had to yield.[13] *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); see R. Gorman, *Basic Text on Labor Law,* 766–786 (1976). In *Sears,* the Court limited the above principle and recognized that state courts are preempted only in cases of arguably prohibited or protected union activity where the controversy presented to the state court is identical to that which otherwise would have been presented to the Board. United argues that the *Sears* qualification requires deference to the state court here because the fraud allegation is a wholly different cause of action, and requires different elements of proof, than the controversy considered by the Board. We would be inclined to agree with United, but for the fact that its fraud allegation is based wholly upon an employee's exercise of protected rights: (1) engaging in protected concerted activity; and (2) resorting to the Board to redress the employer's retaliation for engaging in that activity. We must, therefore, consider Anderson's protected activity in our preemption analysis.

In *Sears,* the Court discussed the "primary jurisdiction" rationale of preemption

---

**13.** Several well recognized (but here inapposite) exceptions to this rule have been developed. See, e. g., *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Youngdahl v. Rainfair,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); *Sears, supra; United Construction Workers v. Laburnum Construction Corp.,* 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954); cf. *New York Tel. Co. v. New York State Dept. of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979).

as stated in *Garmon.* Primary jurisdiction, in the preemption cases,

> "[u]nquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board."

436 U.S. 180, 202, 98 S.Ct. 1745, 1760. The Court went on to hold that:

> "The primary jurisdiction rationale does not provide a *sufficient* jurisdiction for preempting state jurisdiction over arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so."

436 U.S. 180, 202–203, 98 S.Ct. 1745, 1760. (citation omitted).

We find that, because of the intertwined nature of the controversy here—the fact that United's lawsuit is founded upon the alleged fraudulent exercise, on two occasions, of arguably protected rights—and the overlapping factual findings which are determinative of the issues in both cases, that the case involves the same controversy which could have been presented to the Board or the state court. And, as is apparent, "the party who could have presented the protection issue to the Board," *Sears,* 436 U.S. 180, at 202–203, 98 S.Ct. 1745, at 1760, has done so in this case. Preemption is accordingly required under *Sears,* as well as prior law. See *San Diego Building Trades Council v. Garmon, supra; Machinists v. Wisconsin Employment Relations Commission,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

This conclusion is further mandated by the paramount traditional consideration underlying the labor preemption doctrine: the danger of potential conflict between the state court and the Board—specifically, as applied here, the "danger of interference with federal protected conduct ...." *Sears,* 436 U.S. 180, at 203, 98 S.Ct. 1745, at 1760. As the Court recognized

"the acceptability of 'arguable protection' as a justification for preemption in a given class of cases is, at least in part, a function of the strength of the argument that § 7 does in fact protect the disputed conduct." 436 U.S. 180, at 203.

■ Of course, on our review the finding that the conduct herein was protected is a *fait accompli* by Board order. We conclude, however, that in cases of the class before us—employers' civil actions against employees, in the nature of abuse of process and factually based upon the employee's filing of unfair labor practice charges with the Board—all factors require resolution of the employee's unfair labor practice claims in the first instance by the Board. We believe that the Board is uniquely positioned to determine fairly and with presumed expertise whether Anderson was engaged in protected lawful activity, or whether she was abusing the Board's processes as alleged.

In reaching our decision, we also recognize the policy of balance and accommodation embodied in the *Clyde Taylor* doctrine and its progeny, and recognize the restraint with which the Board has exercised its power to find such actions to constitute unfair labor practices over the preceding twenty years. See cases cited in footnote 7, *supra.*

Because the Board's findings were supported by substantial evidence on the entire record and because controlling legal doctrine was correctly applied, we grant enforcement.