IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-56

No. 326PA19

Filed 11 June 2021

CHERYL LLOYD HUMPHREY LAND INVESTMENT COMPANY, LLC

v.

RESCO PRODUCTS, INC., and PIEDMONT MINERALS COMPANY, INC.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 266 N.C. App. 255, 831 S.E.2d 395 (2019), reversing an order granting defendants' motion to dismiss entered on 1 October 2018 by Judge Michael J. O'Foghludha in Superior Court, Orange County. Heard in the Supreme Court on 12 January 2021.

*Manning Fulton & Skinner, P.A., by J. Whitfield Gibson and Charles L. Steel, IV, for plaintiff.*

*Weaver, Bennett & Bland, P.A., by Abbey M. Krysak, and McGuireWoods, LLP, by Bradley R. Kutrow, for defendants.*

*Joshua H. Stein, Attorney General, by Nicholas S. Brod, Assistant Solicitor General, Ryan Y. Park, Solicitor General, and K. D. Sturgis, Special Deputy Attorney General, amicus curiae.*

NEWBY, Chief Justice.

Expressing one's views to government officials is foundational to our political system. This fundamental right to petition the government is protected by both the United States and North Carolina Constitutions. Lawsuits that seek to impose

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

liability based on petitioning activity inevitably chill the exercise of this fundamental right. Here defendants exercised their constitutional right to petition the government when speaking at the public zoning hearings, a political process. We hold that the First Amendment of the United States Constitution and Article I, Section 12 of the North Carolina Constitution explicitly protect petitioning activity, including defendants' speech in this case. Therefore, we reverse the decision of the Court of Appeals.

¶ 2      Because this case involves a motion to dismiss, we take the following allegations as true from plaintiff's complaint. In the summer of 2013, Cheryl Lloyd Humphrey Land Investment Company, LLC (plaintiff), began negotiations with a third party, Braddock Park Homes, Inc. (Braddock Park), to sell approximately 45 acres of land located in Hillsborough. Braddock Park planned to develop the land into a 118-unit subdivision of townhomes. A five-and-a-half acre portion of the property, referred to as Enoe Mountain Village (EMV Property), is located adjacent to the open-quarry mine that Resco Products, Inc. and Piedmont Minerals Company, Inc. (together, defendants) jointly own.

¶ 3      The property could not be developed as planned unless the Town of Hillsborough (Town) annexed the land and rezoned[1] it as "Multi-Family Special Use."

---

[1] We refer to the annexation and rezoning of plaintiff's land collectively as "rezoning." Further, we refer to the body deciding whether to rezone plaintiff's land and before which defendants made their contested statements as the "Town."

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

In the fall of 2013, the Town began a series of hearings to allow the public to express their views about the rezoning petition. Defendants' representatives attended the public hearings and opposed the rezoning of the EMV Property. Defendants' representatives told the Town that (1) they operate an active mine adjacent to the EMV Property; (2) they regularly engage in explosive blasting at the mine; and (3) they conduct the explosive blasting operations roughly 300 feet from the EMV Property. Defendants' representatives "maliciously, intentionally and without justification misrepresented" that future residents living on the EMV Property could be endangered by fly rock, excessive air blasts, and excessive ground vibrations from the blasting operations. When questioned, defendants admitted that they had not reported any violations of ground vibration or air blast limits or the occurrence of fly rock beyond the mine's permitted areas since the date of their last mining permit. Further, defendants conceded they could conduct their operations without endangering the future improvements to or residents of the EMV Property. They admitted that doing so would require additional safety precautions, increasing their costs. Despite the opposition expressed by defendants' representatives, the Town rezoned all of the land as residential and issued the necessary permit in early February of 2014.

¶ 4        Thereafter, plaintiff and Braddock Park entered into a Purchase and Sale Agreement, whereby Braddock Park would purchase the entire 45-acre parcel.

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

However, in the agreement, Braddock Park reserved the right to exclude the EMV Property from the purchase. Later Braddock Park exercised this contractual right to exclude the EMV Property from the purchase, citing the dangers that defendants' representatives reported to the Town—i.e., fly rock and damage to the foundations of homes.

¶ 5    Plaintiff thereafter filed its complaint alleging that "[b]y virtue of their intentional and malicious misrepresentations made to the Town of Hillsborough, the Defendants tortiously interfered with the Plaintiff's prospective economic advantage by inducing Braddock Park Homes, Inc., not to perform [the purchase of the EMV Property]." Defendants moved to dismiss the complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, arguing they were immune from liability because their statements to the Town were constitutionally protected petitioning activity. The trial court granted defendants' motion to dismiss. Plaintiff appealed.

¶ 6    The Court of Appeals reversed, reasoning that this case involves the applicability of the *Noerr-Pennington* doctrine under the United States Constitution, which provides immunity from antitrust liability based on petitioning activity. *Cheryl Lloyd Humphrey Land Inv. Co., LLC v. Resco Prods., Inc.*, 266 N.C. App. 255, 258–59, 831 S.E.2d 395, 398 (2019). Given the apparent limitations of *Noerr-Pennington*, the Court of Appeals reasoned that defendants' conduct—speaking in opposition to the rezoning of plaintiff's land—would fall outside of the doctrine's protections. *Id*. at 263,

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

831 S.E.2d at 401. The Court of Appeals then determined that defendants may have overstated the dangerousness of their blasting activity, despite the classification of blasting as ultrahazardous under North Carolina law. *Id.* at 265, 831 S.E.2d at 402–03. Further, the Court of Appeals concluded that the statements inducing Braddock Park to exercise their contractual right to exclude the EMV Property were sufficient to show interference in a business relationship. *Id.* at 268–69, 831 S.E.2d at 403–05. Thus, the Court of Appeals determined that plaintiff's complaint adequately alleged tortious interference with prospective economic advantage to survive dismissal under Rule 12(b)(6). *Id.* at 270, 831 S.E.2d at 405.

¶ 7         Defendants sought review, which this Court allowed, to determine whether defendants must defend a lawsuit premised on statements made while speaking at the public rezoning hearings. The right to petition the government, protected by both the First Amendment to the United States Constitution and Article I, Section 12 of the North Carolina Constitution, prevents a person from being subjected to a lawsuit based on that person's petitioning activity. Here plaintiff's suit is based on defendants' presentation at the rezoning hearings, which is protected petitioning activity. We hold that defendants' petitioning is protected by the First Amendment and Article I, Section 12.

¶ 8         This Court reviews a trial court's order on a motion to dismiss de novo, *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013), and considers "whether the

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory," *Coley v. State*, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123 (2006) (quoting *Thompson v. Waters*, 351 N.C. 462, 463, 526 S.E.2d 650, 650 (2000)).

> Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

¶ 9        The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, *and to petition the Government for a redress of grievances*." U.S. Const. amend. I (emphasis added). "The right of petitioning is an ancient right. It is the cornerstone of the Anglo-American constitutional system." Norman B. Smith, *"Shall Make No Law Abridging . . .": An Analysis of the Neglected, but Nearly Absolute, Right of Petition*, 54 U. Cin. L. Rev. 1153, 1153 (1986). The Magna Carta of 1215, "the fundamental source of Anglo-American liberties," states that if the king's officials were " 'at fault toward anyone,' " then the barons could " 'lay[ ] the transgression before [the king], [and] petition to have the transgression redressed without delay.' "

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

*Id.* at 1155 (emphasis omitted) (quoting William S. McKechnie, *Magna Carta, A Commentary on the Great Charter of King John* 467 (2d ed. 1914)).

> In 1689, the [English] Bill of Rights exacted of William and Mary stated: "[I]t is the Right of the Subjects to petition the King." This idea reappeared in the Colonies when the Stamp Act Congress of 1765 included a right to petition the King and Parliament in its Declaration of Rights and Grievances. And the Declarations of Rights enacted by many state conventions contained a right to petition for redress of grievances.

*McDonald v. Smith*, 472 U.S. 479, 482–83, 105 S. Ct. 2787, 2790 (1985) (second alteration in original) (citations omitted).

¶ 10 The United States Supreme Court has often addressed the right to petition as a defense to antitrust liability. *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138, 81 S. Ct. 523, 529–30 (1961) (holding the right to petition precluded antitrust liability under the Sherman Act); *see also United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 671, 85 S. Ct. 1585, 1594 (1965) (reiterating the holding of *Noerr*). Although the holdings from *Noerr* and its progeny—the *Noerr-Pennington* doctrine—originated in the antitrust context, the First Amendment principles upon which the doctrine rests are foundational to our political system. Therefore, the protections afforded by the right to petition, recognized in the First Amendment, are not limited to antitrust matters. *See Prof'l. Real Estate Inv'rs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 59, 113 S. Ct. 1920, 1927 (1993) (acknowledging the right to petition functions in "other contexts," not solely "as an

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

antitrust doctrine"); *see also McDonald*, 472 U.S. at 485, 105 S. Ct. at 2791 (holding that the right to petition, while not absolute, provides the same protection in defamation actions as the freedoms of speech, press, and assembly).

¶ 11        Rather, the right to petition protects efforts to influence the actions of government officials, whether in the legislative, executive, or judicial branch. *See* Congressional Research Service, S. Doc. 99-16, *The Constitution of The United States of America: Analysis and Interpretation*, 1141–45 (Johnny H. Killian & Leland E. Beck eds., 1982). Protected petitioning activity includes lobbying local officials regarding a zoning ordinance. *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 382, 111 S. Ct. 1344, 1355 (1991) (holding that the right to petition precluded liability for lobbying in favor of a local zoning ordinance). The right to petition protects petitioning activity "regardless of intent or purpose" because whether "a private party's political motives are selfish is irrelevant[.]" *Id.* at 380, 111 S. Ct. at 1354 (citing *Pennington*, 381 U.S. at 670, 85 S. Ct. at 1593). In a political process meant to address public concerns, a commitment to "free and open debate" means other parties are free to counter selfish or misleading speech with speech of their own. *Connick v. Meyers*, 461 U.S. 138, 145, 103 S. Ct. 1684, 1689 (1983) (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 571–72, 88 S. Ct. 1731, 1736 (1968)).

¶ 12        Predating the federal Bill of Rights, the North Carolina Constitution has

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

protected the right to petition since 1776. *See* N.C. Const. art. I, § 12; N.C. Const. of 1868, art. I, § 25; N.C. Const. of 1776, Declaration of Rights § 18. Article I, Section 12 provides that "[t]he people have a right to assemble together to consult for their common good, to instruct their representatives, and to apply to the General Assembly for redress of grievances[.]" N.C. Const. art. I, § 12. Provisions like Article I, Section 12 in state declarations of rights served as a model for the Bill of Rights. *See* Smith, *Shall Make No Law Abridging*, at 1174 (noting that state declarations of rights "expressly included the right to petition" prior to the Bill of Rights). Because the General Assembly "delegate[s] a portion of [its] power to municipalities," petitioning activity can occur at the local government level. *King v. Town of Chapel Hill*, 367 N.C. 400, 406, 758 S.E.2d 364, 370 (2014); s*ee High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 656, 142 S.E.2d 697, 702 (1965) (stating the General Assembly "strengthen[ed] local self-government by providing for the delegation of local matters by general laws to local authorities" (emphasis omitted)).

These local governments are "[l]ocal political subdivisions [that] are 'mere instrumentalities of the State for the more convenient administration of local government[.]'" *Town of Boone v. State*, 369 N.C. 126, 131, 794 S.E.2d 710, 714 (2016) (quoting *Holmes v. City of Fayetteville*, 197 N.C. 740, 746, 150 S.E. 624, 627 (1929)); *see also King*, 367 N.C. at 404, 758 S.E.2d at 369 ("[The Town of Chapel Hill is] a mere creation of the legislature[.]" (citing *Pleasants*, 264 N.C. at 654, 142 S.E.2d at

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC v. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

701)). The right to petition protected by Article I, Section 12 is "connect[ed] with the mechanics of popular sovereignty" which can occur before these local political subdivisions. John V. Orth & Paul Martin Newby, *The North Carolina State Constitution* 58 (2d ed. 2013). Article I, Section 12 thus protects petitioning activity before "local political subdivisions" such as a town.

¶ 14        Protecting the right to petition requires early dismissal of lawsuits that impermissibly seek to infringe on the right and thus chill petitioning activity occurring in these political contexts. *See Bill Johnson Rests. v. NLRB*, 461 U.S. 731, 740–41, 103 S. Ct. 2161, 2168 (1983) ("A lawsuit no doubt may be used by [a party] as a powerful instrument of coercion or retaliation . . . . [T]he [opposing party] will most likely have to retain counsel and incur substantial legal expenses to defend against it." (citing *Power Sys., Inc.*, 239 N.L.R.B. 445, 449–50 (1978), *enf. denied*, 601 F.2d 936 (7th Cir. 1979))). "[T]he pall of fear and timidity imposed upon those who would give voice to public criticism is an atmosphere in which the [right to petition] cannot survive." *New York Times Co. v. Sullivan*, 376 U.S. 254, 278, 84 S. Ct. 710, 725 (1964). When a lawsuit is premised on a party's petitioning activity, the First Amendment and Article I, Section 12 mandate early dismissal.

¶ 15        The question here is whether defendants' speech constitutes protected petitioning activity. Taking the allegations of plaintiff's complaint as true, defendants "maliciously, intentionally and without justification" made misrepresentations

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC V. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

regarding the dangers of fly rock, excessive air blasts, and ground vibrations from their own mining activity. Defendants, however, made these statements during a public zoning process before the Town. The Town is a clear example of a local political subdivision with delegated authority from the General Assembly. Zoning is a political process by which a local government seeks citizen input to make informed decisions for the good of the whole. Neither the maliciousness nor the falsity of the statements has any bearing on our analysis. Rather than subjecting to civil liability misleading or malicious speech made before a local political subdivision during a public zoning process, our constitutions protect free and open debate so that citizens may voice their concerns to the government without fear of retribution. Plaintiff's remedy is to expose the falsity of the statements and submit alternative evidence, as plaintiff did here. During the process, defendants' misstatements of the current risk associated with their mining activities and their financial incentives were exposed. The evidence taken as a whole convinced the Town to rezone the EMV Property over defendants' objections. That Braddock Park declined to purchase the EMV Property, to plaintiff's economic disadvantage, does not remove protection from defendants' speech. Therefore, defendants' statements during the zoning process constitute protected petitioning activity.

¶ 16          The right to petition the government is a fundamental right. Here defendants' testimony during the public zoning process constitutes petitioning activity. Because

CHERYL LLOYD HUMPHREY LAND INV. CO., LLC v. RESCO PRODS., INC.

2021-NCSC-56

*Opinion of the Court*

early dismissal is necessary to protect the exercise of this fundamental right, the trial court properly granted defendants' motion to dismiss plaintiff's lawsuit. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.