GEORGE KING, D/B/A GEORGE'S TOWING AND RECOVERY, PLAINTIFF
v.
TOWN OF CHAPEL HILL, DEFENDANT

No. COA12-1262

Filed 4 June 2013

**1. Cities and Towns—towing ordinance—enabling authority**

A local towing ordinance was a valid exercise of a town's police power under N.C.G.S. § 160A-174(a), which is ambiguous and therefore interpreted broadly. A town has no inherent police power and may exercise only such powers that are conferred by the General Assembly. Where the authorizing language is ambiguous, a broad construction is used, but the plain meaning is used where there is no ambiguity. A thorough review of the towing ordinance in this case and N.C.G.S. § 160A-174(a) led to the holding that the ordinance covered a proper subject for regulation under the town's police power, and the trial court's order permanently enjoining the towing ordinance was reversed.

**2. Constitutional Law—challenge to ordinance—no citation issued**

In an action to enjoin a towing ordinance and a mobile phone ordinance (because tow truck drivers used mobile phones in their business), the trial court erred by permanently enjoining enforcement of the mobile phone ordinance where plaintiff was not subject to a manifest threat of irreparable harm. The constitutionality of the ordinance should be left to be tested when a citation is issued; plaintiff must test the ordinance in the context of his own case.

Appeal by Defendant from Order and Judgment entered 9 August 2012 by Judge Orlando F. Hudson, Jr., in Orange County Superior Court. Heard in the Court of Appeals 11 March 2013.

*Stark Law Group, PLLC, by Thomas H. Stark, for Plaintiff.*

*Ralph D. Karpinos and Matthew J. Sullivan for Defendant.*

*North Carolina League of Municipalities, by Kimberly S. Hibbard and Gregory F. Schwitzgebel III, as amicus curiae.*

STEPHENS, Judge.

*Factual Background and Procedural History*

This case arises from the enactment of two ordinances by the Town of Chapel Hill ("Defendant" or "the Town"). The ordinances involve the regulation of towing practices and mobile phone usage. Plaintiff George King operates a towing business in the Town under the name "George's Towing and Recovery" and filed a complaint against the Town on 2 May 2012, requesting (1) a judgment declaring the ordinances invalid and (2) preliminary and permanent injunctions barring their enforcement.

The trial court issued a temporary restraining order that same day and, six days later, ordered a preliminary injunction against enforcement of the ordinances. On 4 June 2012, Defendant filed its amended answer. On 15 June and 18 June 2012, respectively, Defendant and Plaintiff moved for judgment on the pleadings, alleging that there were no material issues of fact and judgment was proper as a matter of law. The case was heard on 2 August 2012. On 9 August 2012, the trial court issued its order and judgment granting Plaintiff's request to permanently enjoin enforcement of the ordinances. In its order, the trial court made the following pertinent findings of fact and conclusions of law:

FINDINGS OF FACT

. . . .

2. Defendant . . . enacted a towing ordinance, . . . which came into effect May 1, 2012, hereinafter "the Towing Ordinance."

. . . .

4. Defendant . . . also enacted an ordinance prohibiting the use of mobile phones while driving a motor vehicle, . . .

which was to become effective June 1, 2012, hereinafter "the Mobile Phone Ordinance."

. . . .

9.  [The Towing Ordinance] sets a fee schedule, regulates the method of payment, and includes extensive sign and notice requirements for private lots, as well as specifications for a tow storage lot which the Chapel Hill Police Department will inspect once per year . . . . All towing operators are required to comply with this ordinance at the risk of civil and criminal penalties.

. . . .

11. To comply with [the Towing Ordinance], Plaintiff is required to use a telephone to report to the police department when he removes an illegally parked vehicle before the vehicle is removed from the private property.

12. It is the nature of Plaintiff's business to operate from trucks that are constantly driving to carry out their duties to their clients, to check the businesses' parking lots, check video equipment, and to tow and travel to release vehicles.

13. The use of a mobile. phone by Plaintiff's drivers is necessary to make the required phone calls to the police department while in their vehicles.

14. [B]ecause of Plaintiff's mobile business, he must be able to use his mobile phone to respond to inquiries regarding vehicles that have been towed and need to be released.

15. [The Mobile Phone Ordinance] prohibits use of a mobile phone, either handheld or hands-free, while driving a vehicle.

16. Plaintiff will suffer irreparable harm if Defendant is allowed to enforce [the Towing Ordinance] and [the Mobile Phone Ordinance] due to the threat of prosecution for violation of any notice requirements or use of a mobile phone while driving, which is a necessary part of his business.

. . . .

CONCLUSIONS OF LAW

. . . .

3. Article II[,] §[]24 (1)(j) of the North Carolina Constitution states: "The General Assembly shall not enact any local, private, or special act or resolution: [r]egulating labor, trade, mining[,] or manufacturing[.]"

4. The relevant enabling statute for the Towing Ordinance is N.C.[ Gen. Stat.] § 20-219.2. Defendant has conceded that [section 219] is a local law.

5. "Trade," as used in Article II[,] §[]24[,] . . . has been defined . . . as "a business venture for profit and includes any employment or business embarked in for gain or profit[]" . . . .

6. [Section 219] and the [Towing Ordinance] . . . regulate trade within the meaning of [Article II, § 24(1)(j)].

7. Because [section 219] is a local law regulating trade, it violates [Article II, § 24(1)(j)].

. . . .

9. In the absence of [section 219], the Town[] has not been granted the authority to regulate towing from the General Assembly.

10. Plaintiff will suffer irreparable harm if Defendant is allowed to enforce [the Towing Ordinance] and [the Mobile Phone Ordinance] due to the threat of prosecution for violation of any notice requirements or use of a mobile phone while driving, which is a necessary part of his business.

. . . .

12. The North Carolina General Assembly has enacted general laws regulating the use of mobile phones by all North Carolina drivers by proscribing the use of cell phones for texting and other media . . . , by prohibiting all use of cell phones by drivers under 18 years of age . . . , and by prohibiting all use of cell phones by anyone operating a school bus . . . .

13. In regulating mobile phone usage . . . , the General Assembly has enacted a comprehensive scheme of mobile phone regulation.

14. As a result . . . , the authority of [the Town] to enact the Mobile Phone Ordinance is preempted, and therefore the ordinance is void, and without force and effect.

. . . .

16. As a result of the foregoing, Plaintiff is entitled to a declaratory judgment entering the conclusions set forth herein and a permanent injunction preventing enforcement of [the Towing Ordinance] and [the Mobile Phone Ordinance].

Accordingly, the trial court determined that (1) N.C. Gen. Stat. § 20-219.2 is unconstitutional, (2) the Towing Ordinance is unconstitutional as an application of section 219, and (3) the Mobile Phone Ordinance is unconstitutional as preempted by State law enacted by the General Assembly. The court permanently restrained enforcement of both ordinances, and this appeal followed.

*Standard of Review*

Conclusions of law and issues of statutory construction are reviewed *de novo* on appeal. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted); *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

"When a party moves for judgment on the pleadings, he admits the truth of all well-pleaded facts in the pleading of the opposing party and the untruth of his own allegations insofar as they are controverted by the pleadings of the opposing party." *Pipkin v. Lassiter*, 37 N.C. App. 36, 39, 245 S.E.2d 105, 106 (1978) (citation omitted).

[We review] a trial court's grant of a motion for judgment on the pleadings *de novo*. Judgment on the pleadings, pursuant to Rule 12(c), is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain.

*Carpenter v. Carpenter*, 189 N.C. App. 755, 757, 659 S.E.2d 762, 764–65 (2008) (citations and quotation marks omitted).

## Discussion

On appeal, the Town argues (1) that the Towing Ordinance is a lawful exercise of its general police power or, in the alternative, that section 219 is a constitutional grant of authority sufficient to support the Towing Ordinance; and (2) that the trial court erred by addressing the Mobile Phone Ordinance in its order because Plaintiff is not subject to an imminent threat of irreparable harm or, if Plaintiff is subject to an imminent threat of irreparable harm, that the Mobile Phone Ordinance is authorized by the Town's general police power. We find the Town's primary arguments persuasive and decline to address either section 219 or the enforceability of the Mobile Phone Ordinance.

## I. The Towing Ordinance

[1] In support of its contention that the Towing Ordinance is enforceable via the Town's general police power, Defendant cites to sections 160A-174(a) and 160A-194 of the North Carolina General Statutes as enabling legislation. We agree that the Towing Ordinance is a valid exercise of the Town's police power under section 174(a) and refrain from addressing its validity under section 194.

### A. Municipal Authority to Enact Legislation

The North Carolina Constitution declares that "the legislative power of the State shall be vested in the General Assembly," N.C. Const. art. II, § 1, which "may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable." N.C. Const. art. VII, § 1. Accordingly, "[i]t is a well-established principle that municipalities, as creatures of statute, can exercise only that power which the legislature has conferred upon them." *Bellsouth Telecomms., Inc. v. City of Laurinburg*, 168 N.C. App. 75, 80, 606 S.E.2d 721, 724 (citations and quotation marks omitted), *disc. review denied*, 359 N.C. 629, 615 S.E.2d 660 (2005) [hereinafter *Bellsouth*]. Therefore, "[a] city or town in this State has no inherent police power. It may exercise only such powers as are expressly conferred upon it by the General Assembly or as are necessarily implied from those expressly so conferred." *Town of Conover v. Jolly*, 277 N.C. 439, 443, 177 S.E.2d 879, 881 (1970).

In order to determine whether the legislature intended section 174(a) to authorize cities and towns to implement towing regulations like the

one here, we rely on established canons of statutory construction. "The polar star of statutory construction is that the intent of the legislature controls. That intent must be found from the language of the act, its legislative history[,] and the circumstances surrounding its adoption[,] which throw light upon the evil sought to be remedied [by the statute]." *Multimedia Publ'g of N.C., Inc. v. Henderson Cnty.*, 136 N.C. App. 567, 570, 525 S.E.2d 786, 789 (citation and quotation marks omitted), *disc. review denied*, 351 N.C. 474, 543 S.E.2d 492 (2000). "To determine legislative intent, a court must analyze the statute as a whole, considering the chosen words themselves, the spirit of the act, and the objectives the statute seeks to accomplish." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 895 (1998). "A construction which operates to defeat or impair the object of the statute must be avoided [where possible]. An analysis . . . must be done in a manner which harmonizes with the underlying reason and purpose of the statute." *Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).

"Early in our history, [the Supreme Court] broadly construed the State's grant of legislative authority to municipalities." *Lanvale Props., LLC v. Cnty. of Cabarrus*, __ N.C. __, __, 731 S.E.2d 800, 808 (2012) [hereinafter Lanvale]. This changed in the 1870s, when the "[Supreme] Court adopted a more restrictive approach known as 'Dillon's Rule.' " *Id.* at __, 731 S.E.2d at 809. Dillon's Rule is named for Judge John Dillon of Iowa, who proclaimed in a 19th-century treatise on municipal law that:

> It is a general and undisputed proposition of law[] that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in *express words*; second, those *necessarily or fairly implied in* or *incident to* the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation.

*Smith v. City of Newbern*, 70 N.C. 14, 18 (1874) (emphasis in original); *see also* David W. Owens, *Local Government Authority to Implement Smart Growth Programs*, 35 Wake Forest L. Rev. 671, 680–82 (2000) (providing a detailed history of the law regarding local government authority in North Carolina); *see generally* 1 John F. Dillon, The Law of Municipal Corporations ch. V, § 55, at 173 (2d ed. 1873), *available at* http://books. google.com/books ?id=QeQ9AAAAIAAJ&pg=PA173#v=onepage&q&f= false ("[The municipal corporation may only possess those powers that are] not simply convenient, but indispensable. Any fair, reasonable doubt

concerning the existence of power is resolved by the courts against the corporation, and the power is denied.").

In 1971, however, the General Assembly implicitly overruled Dillon's Rule by enacting chapter 160A.[1] *Bellsouth*, 168 N.C. App. at 82–83, 606 S.E.2d at 726 ("The narrow Dillon's Rule of statutory construction used when interpreting municipal powers has been replaced by N.C. Gen. Stat. § 160A-4's mandate that the language of Chapter 160A be construed in favor of extending powers to a municipality . . . ."); *see also Lanvale*, __ N.C. at __, 731 S.E.2d at 809 (noting that, unlike Dillon's Rule, "section 160A established a legislative mandate that [the appellate courts must] construe in a broad fashion the provisions and grants of power conferred upon municipalities") (citation and quotation marks omitted).

In chapter 160A, the legislature made the following pronouncement regarding how courts should construe its various grants of legislative authority to municipalities:

### ARTICLE 1.

### []STATUTORY CONSTRUCTION.

. . . .

### § 160A-4. Broad construction.

It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be broadly construed and *grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect:* Provided[] that the exercise of such additional or supplementary powers shall not be contrary to State or federal law or to the public policy of this State.

N.C. Gen. Stat. § 160A-4 (2011) (emphasis added) [hereinafter section 4].

---

1. An early iteration of Chapter 160A sought to abrogate Dillon's Rule explicitly, providing in its statement of policy that "the rule of construction commonly called 'Dillon's Rule,' by which cities are held to possess only those powers expressly conferred by law or necessarily to be implied from some specific grant of power, shall not be followed[.]" H.B. 153, § 160A-4 (as referred to the House Committee on Local Government, 5 February 1971).

## B. Judicial Interpretation of Authority Granted to Municipalities After 1971

Our Supreme Court has since determined that section 4 "makes it clear that the provisions of [C]hapter 160A and of city charters *shall* be broadly construed and . . . grants of power *shall* be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry [those provisions] into execution and effect." *Homebuilders Ass'n of Charlotte, Inc. v. City of Charlotte*, 336 N.C. 37, 43–44, 442 S.E.2d 45, 50 (1994) (emphasis in original) [hereinafter *Homebuilders*]. Accordingly, "[w]e treat this language as a legislative mandate that we are to construe in a broad fashion the provisions and grants of power contained in Chapter 160A." *Id.* at 44, 442 S.E.2d at 50 (citations and quotation marks omitted).

Despite the language in *Homebuilders*, our Supreme Court has failed to broadly construe grants of power to cities and towns with uniformity. Specifically, when the language of a municipal statute is unambiguous, the Court has directed that such language "must be enforced as written." *Bowers v. City of High Point*, 339 N.C. 413, 419–20, 451 S.E.2d 284, 289 (1994) (citation omitted). In *Bowers*, our Supreme Court allowed the City of High Point to void a contract between itself and certain early-retired police officers as *ultra vires* on grounds that the city did not have the statutory authority to contract with them and pay a separation allowance. *Id.* at 426, 451 S.E.2d at 293. In coming to that determination, the *Bowers* Court — after citing to both Dillon's Rule and section 4 of Chapter 160A — used a plain meaning analysis of the relevant statutory language. *Id.* at 418–23, 451 S.E.2d at 288–91 (noting that the relevant language "has a definite meaning not subject to alteration by local governments").

In *Smith Chapel Baptist Church v. City of Durham*, 350 N.C. 805, 517 S.E.2d 874 (1999) [hereinafter *Smith Chapel*], decided approximately five years after *Bowers*, the Supreme Court again used a plain meaning construction to interpret certain municipal statutes. *Id.* Employing that construction, the Court determined that the City of Durham had the authority to implement a stormwater management program only to the extent that it involved "those *systems* of physical infrastructure, structural or natural, for servicing stormwater." *Id.* at 812, 517 S.E.2d at 879 (emphasis added). Given that limitation, the Court struck down the city's stormwater program as exceeding "the express limitation of the plain and unambiguous reading of the statute[.]" *Id.* Justice Frye authored a dissenting opinion in that case. Joined by two other justices, Justice Frye argued for application of the broad mandate prescribed in section

4 on grounds that the word "system" in "stormwater drainage system" is impliedly ambiguous, and section 4 should have been used to allow the city to execute its stormwater program. *Id.* at 819–21, 517 S.E.2d at 883–84 (Frye, J., dissenting) (citing *Homebuilders*, 336 N.C. at 42, 442 S.E.2d at 49) ("Any ambiguity in the meaning of the term 'stormwater and drainage *system*' must be resolved in favor of enabling municipalities to execute the duties imposed upon them by [law].").

Six years later, in 2005, we declined to use the plain meaning construction described in *Bowers* and *Smith Chapel* when interpreting certain sections of Chapter 160A. Instead, we relied on *Homebuilders* to hold that the City of Laurinburg had been granted sufficient authority under Chapter 160A to operate a fiber optics network. *Bellsouth*, 168 N.C. App. at 83–87, 606 S.E.2d at 726–28. We found in *Bellsouth* that the alleged legislative grant of authority — which defined certain authorized public enterprises as, *inter alia*, "[c]able television systems" — was ambiguous. *Id.* (citing N.C. Gen. Stat. § 160A-311(7)). Specifically, we noted that the term "cable television systems" is defined by statute as "any system or facility that . . . by wires or cables alone, receives, . . . transmits, or distributes any . . . electronic signal, audio or video or both, to [subscribers]." N.C. Gen. Stat. § 160A-319(b); *see also Bellsouth*, 168 N.C. App. at 86, 606 S.E.2d at 728 ("[T]he language of the statute is ambiguous as to whether the fiber optic network run by [the city] falls within [the statute's] contours."). Accordingly, we applied the broad construction required by section 4 to our interpretation of the relevant statutory sections and ruled that the city was acting within its municipal authority even though "[the] fiber optics network was most likely not something the legislature envisioned in 1971 when [it] enacted the statute allowing a municipality to operate a [cable television system] as a public enterprise." *Id.* (noting, however, that the system — if it had existed in 1971 — would likely have been authorized through those "additional and supplementary powers that are reasonably necessary or expedient" under section 4).

Most recently, in *Lanvale*, our Supreme Court determined that the language of certain zoning statutes was unambiguous and, thus, that the county-equivalent of section 4 did not apply to their interpretation. *Lanvale*, __ N.C. at __, 731 S.E.2d at 810. The relevant statutes in that case (1) provided that county zoning ordinances may "regulate and restrict" certain specific qualities of buildings and real property "or [regulate and restrict] other purposes" and (2) listed those specific "public purposes" that could be regulated, providing that the ensuing regulations should "be designed to promote the public health, safety, and general welfare."

*Id.* at __, 731 S.E.2d at 808; *see also* N.C. Gen. Stat. § 153A-340(a), -341 (2011). Using a plain meaning analysis, the Court held that the statutes at issue did not give the county implied authority to enact a public facilities ordinance, citing the maxim that "a county's zoning authority cannot be exercised in a manner contrary to the express provisions of the zoning enabling authority." *Lanvale,* __ N.C. at __, 731 S.E.2d at 810 (citing *Cnty. of Lancaster, S.C. v. Mecklenburg Cnty.,* N.C., 334 N.C. 496, 509, 434 S.E.2d 604, 613 (1993)) (quotation marks omitted).

Justice Hudson authored a dissenting opinion in that case, joined by Justice Timmons-Goodson, in which she argued for the implementation of a broad interpretation under the county-equivalent of section 4. *Id.* at 818–28 (Hudson, J., dissenting). In response, the Court asserted that the language of the statutes already provides "clear guidance." *Id.* at __, 731 S.E.2d at 810 ("[The dissent's] argument overlooks the fact that the plain language of [the statutes] provides *clear guidance* to counties regarding the extent of their zoning powers. Accordingly, [the statutes] simply cannot be employed to give authority to county ordinances that do not fit within the parameters set forth in the enabling statutes.") (emphasis added). Importantly, in responding to Justice Hudson's dissent, the Court implicitly affirmed two different approaches that may be employed when evaluating the validity of a statutory grant of authority to municipal corporations. Citing *Homebuilders* and *Smith Chapel* as examples of those different approaches, the Court stated that *Smith Chapel* was binding on it because the statutory language in *Smith Chapel* was also "clear and unambiguous." *Id.* at __, 731 S.E.2d at 811. Therefore, the Court concluded, "absent *specific* authority from the General Assembly, [public facilities ordinances like the one in this case] are invalid as a matter of law." *Id.* at __, 731 S.E.2d at 815.

It is important to understand the two different approaches referenced in *Lanvale*. These approaches were clearly laid out in *Bellsouth,* where we interpreted *Homebuilders, Bowers,* and *Smith Chapel* to be "consistent statements of the law and in accord with [section 4]" because they applied the broad construction mandate only where the statutory language at issue was ambiguous. *Bellsouth,* 168 N.C. App. at 82, 606 S.E.2d at 726. Reconciling the disparate holdings in those cases, we explained that section 4 should be applied only "where there is an ambiguity in the authorizing language, or [where] the powers clearly authorized [by the legislature] reasonably necessitate 'additional and supplementary powers' 'to carry them into execution and effect.' However, where the plain meaning of the statute is without ambiguity, it must be enforced as written." *Id.* at 82–83, 606 S.E.2d at 726 (citations, certain quotation

marks, brackets, and emphasis omitted); *see also Lanvale*, __ N.C. at __, 731 S.E.2d at 810 (concluding that a county-specific provision that is similar to the "broad construction" provision embodied in section 4 only applies when the enabling statute is ambiguous); *see generally Bowers*, 339 N.C. at 417, 451 S.E.2d at 288 ("[Section 4], while reflecting our legislature's desire that cities should have the authority to exercise the powers conferred upon them, nevertheless clearly reiterates the principle that municipalities have only that power which the legislature has given them.").

### C. Interpretive Construction of Section 174(a) of Chapter 160A

Given the instruction we provided in *Bellsouth*, we must examine section 174(a) in this case by asking: (1) whether the language of N.C. Gen. Stat. § 160A-174(a) is *ambiguous* and, thus, should be analyzed under the broad construction of section 4, or (2) whether it is *unambiguous* and, thus, should be analyzed under our stricter plain-meaning inquiry. We hold that the language of section 174(a) is ambiguous, and, therefore, we apply the General Assembly's mandated broad construction when interpreting section 174(a).

The Town argues that it was delegated the power to regulate towing by the General Assembly as an element of the general police power granted to municipalities under section 174(a) of Chapter 160A of the North Carolina General Statutes. That section provides as follows:

### ARTICLE 8.

### DELEGATION AND EXERCISE OF THE GENERAL POLICE POWER.

### § 160A-174. General ordinance-making power.

   (a) A city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances.

Relevant to this case, section 177 of Chapter 160A elaborates that "[t]he enumeration in this Article or other portions of this Chapter of specific powers to regulate, restrict or prohibit acts, omissions, and conditions shall not be deemed to be exclusive or a limiting factor upon the *general authority* to adopt ordinances conferred on cities by G.S. [§] 160A-174." N.C. Gen. Stat. § 160A-177 (emphasis added). In addition,

our Supreme Court has observed that, "when the legislative body under-takes to regulate a business, trade, or profession [*under section 174(a)*], courts assume it acted within its powers until the contrary clearly appears." *Smith v. Keator*, 285 N.C. 530, 534–35, 206 S.E.2d 203, 206 (1974) (citations omitted); *see, e.g., Cheek v. City of Charlotte,* 273 N.C. 293, 298, 160 S.E.2d 18, 23 (1968) ("We hold that the occupation of a mas-sagist and the business of massage parlors and similar establishments are proper subjects for regulation under the police power of the City of Charlotte.").

Unlike the zoning ordinances in *Lanvale*, section 174(a) fails to list specific circumstances where the general ordinance-making power may be employed. Rather, it enables municipalities to regulate the broad cat-egories of "health," "safety," and "welfare" to the end of ensuring "peace and dignity" and "defin[ing] and abat[ing] nuisances." Given the far-reaching meanings contained within these terms, section 174(a) is more akin to the statutes in *Bellsouth* and, as such, ambiguous. Given that conclusion, the broad construction required by the General Assembly in section 4 of Chapter 160A is applicable here.

### D. The Town's Authority to Implement the Towing Ordinance Under Section 174(a) of Chapter 160A

Plaintiff asserts that section 174(a) does not operate as a valid enabling statute for the Towing Ordinance, despite its broad construc-tion, for the following reasons: (1) the "North Carolina Supreme Court summarily rejected this argument made under county equivalents of [sec-tion 160A-174]" in *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 581 S.E.2d 415 (2003); (2) the Towing Ordinance does not "fall within the limited statutory prescriptions" of section 174(a) because "[towing on private lots] is not detrimental to the health or safety of the public . . . . [and] is not a nuisance that needs to be abated"; (3) the fee provisions of the Towing Ordinance are "in no way related to the health, safety, or welfare of its citizens and the peace and dignity of the [Town]"; (4) the Towing Ordinance violates the right to contract under the North Carolina and United States Constitutions "due to its fee setting provision"; and (5) the Towing Ordinance creates a private cause of action under *Williams* and "cannot be upheld by [section 174]." We are unpersuaded.[2]

---

2. We note that, in his explanation of the general law regarding the construction of those statutes delegating the State's police power to municipalities, Plaintiff relies on deci-sions of our Supreme Court issued *before 1971, i.e.*, previous to the enactment of Chapter 160A and its mandated "broad construction" under section 4. Plaintiff's reliance on those legal principles, written under the auspices of Dillon's Rule, is misplaced.

Plaintiff's reliance on *Williams* in his first and fifth arguments is erroneous. In that case, our Supreme Court determined, *inter alia*, that a county ordinance, which "creat[ed] a civil relationship and a concomitant private cause of action by one citizen against another," was not authorized by section 174 and the county equivalent of section 174 because the ordinance "substantially exceed[ed] the leeway permitted to individual counties by [those] statutes." *Id.* at 191–92, 581 S.E.2d at 430. Specifically, "[t]he [o]rdinance [was] enforceable by a private cause of action that permit[ted] those affected [by employment discrimination] to recover injunctive relief, back pay, and compensatory and punitive damages up to $300,000" from their employers. *Id.* at 175, 581 S.E.2d at 420.

Unlike the ordinance in *Williams*, the Towing Ordinance does not create a private cause of action against those individuals who would violate it. While the Towing Ordinance provides that an offender will be subject "to a civil penalty" if he or she violates the ordinance, there is no language granting a private individual the right to bring suit against the towing party. Indeed, the ordinance clearly states that a conviction for its violation shall result in "a misdemeanor," which is a criminal sanction. Accordingly, Plaintiff's first and fifth arguments are without merit.

We are also unpersuaded by Plaintiff's second argument, that the Towing Ordinance does not fall within the broad construction of section 174(a). At oral argument, the Town commented that the Towing Ordinance requires certain signs to be placed "in an interval of one at every fifth parking space" for the purpose of informing citizens that they may be towed even when they lawfully park at a business and then walk to another business in a different parking lot. *See also* Chapel Hill, N.C., Code ch. 11, art. XIX, § 11-301(a) (2012) (requiring signs every fifth space to include the following phrase when the property owner has adopted a walk-off towing policy: "If you walk[]off this property, you are subject to being towed. This includes patrons who are frequenting business on this property."). The Towing Ordinance also includes a credit card requirement for payment of towing fees, which Defendant states is meant to protect young people who get towed early in the morning and do not have the cash necessary to release their cars at that time of the day. *See id.* at § 11-304(d).

While Plaintiff is correct that "[t]owing on private lots is done and allowed by state law for the purpose of protecting private property," this does not obviate the need to regulate that process when it has become "detrimental to the health, safety, or welfare" of the citizens of the Town. In the "Findings and Intent" section of the Towing Ordinance, the Town

states that its goal is to "protect[] the health, safety, and welfare of the general public and preserv[e] the public order," which it found had been threatened by certain "practices related to the non-consensual towing of motor vehicles from private property[.]" *Id.* at § 11-300. The Town also states in its brief that the Towing Ordinance is meant to "ensure that persons are on notice" regarding the towing rules that will be employed in various parking lots throughout Chapel Hill. Further, the Towing Ordinance requires "detailed receipts and a towing information sheet" to provide the public with information on why their vehicles were towed, which "can serve to prevent conflicts between unknowledgeable citizens and tow operators." *See id.* For these reasons, we hold that the Towing Ordinance falls within the purview of section 174(a).

Third, Plaintiff argues that the fee regulations contained in the Towing Ordinance are invalid because (1) the General Assembly did not explicitly delegate the power to decide "what a reasonable fee is with regard to towing," as it did with taxicabs, and (2) the fee regulations are "in no way related to the health, safety, or welfare of [the] citizens and the peace and dignity of the [Town]." We are unpersuaded.

The fee regulations state that a towing firm may not charge the owner of a towed vehicle more than the Town's established fee schedule and must refrain from charging storage fees during "the first twenty-four hour time period from the time the vehicle is initially removed from the private property." *Id.* at § 11-304(a). The provision also requires towing firms to provide receipt for payment and "[a] clear and accurate reason for the towing and the date and time of the towing." *Id.* at 11-304(b)(4). Payment must be accepted if it is made by cash, one of at least two major national credit cards supported by the tower, or a debit card.[3] *Id.* at 11-304(d). Given these provisions, we conclude that, despite Plaintiff's protestations, the fee regulations "regulate . . . acts, omissions, or conditions, detrimental to the health, safety, or welfare of [the] citizens [of the Town] and the peace and dignity of the [Town]." Accordingly, the fee regulations are implicitly authorized by the General Assembly under the broad ambit of section 174(a). *See* N.C. Gen. Stat. § 160A-174(a).

Fourth, Plaintiff asserts that the Towing Ordinance's fee provisions violate his right to contract under the North Carolina and United States constitutions. In support of that point, Plaintiff describes the right to contract, generally, as a protected property right and cites to an opinion

---

3. As noted above, the credit card provision serves to protect young people in the Town who are towed late at night or early in the morning and lack the ability to pay with cash at that time of day.

of our Supreme Court, which declares that a statute infringing upon an individual's freedom of contract is invalid "unless the law's benefit to the public outweighs the infringement." *State ex rel. Utils. Comm'n v. Edmisten*, 294 N.C. 598, 611, 242 S.E.2d 862, 870 (1978). Plaintiff then argues that any benefit the Towing Ordinance provides is outweighed by his right to contract, contending that the Towing Ordinance attempts to protect "trespassers who were on notice of their unlawful parking and who stole the particular property owner's rights to that parking space." To the extent that the Towing Ordinance violates Plaintiff's right to contract,[4] we disagree.

As we have already discussed, *supra*, the Towing Ordinance was enacted to protect the citizens of the Town of Chapel Hill and provides a number of beneficial services to those citizens. In addition, we note that Plaintiff has offered no evidence that the purported "trespassers" are actually on notice of any unlawful parking. Accordingly, we find this argument unpersuasive. As Plaintiff provides no other evidence to support his fourth position, it is overruled.

Thus, after a thorough review of the Towing Ordinance and chapter 160A, we broadly construe section 174(a) of Chapter 160A — as the General Assembly mandated in section 4 of that same chapter — and hold that the Towing Ordinance covers a proper subject for regulation under the Town's police power. Accordingly, the trial court's order as to the Towing Ordinance is reversed. For the foregoing reasons, we need not address the constitutionality of section 219 or whether the Towing Ordinance is authorized under section 194.

## II. The Mobile Phone Ordinance

[2] The Town also contends that the trial court erred in permanently enjoining enforcement of the Mobile Phone Ordinance because Plaintiff is not subject to a manifest threat of irreparable harm. We agree.

In pertinent part, the Mobile Phone Ordinance states:

> [N]o person 18 years of age or older shall use a mobile telephone or any additional technology associated with a mobile telephone while operating a motor vehicle . . . .

---

4. Plaintiff presents no argument that a contract exists or that the Towing Ordinance violates his particular right to make one. Rather, he cites broad legal principles related to the right to contract and then moves immediately to his "benefit versus infringement" argument.

> This prohibition shall not apply to the use of a mobile tele-
> phone or additional technology in a stationary vehicle.

Chapel Hill, N.C., Code ch. 21, art. VII, § 21-64(b). The Mobile Phone
Ordinance can only be enforced when "the officer issuing [a] citation
has cause to stop or arrest the driver of such motor vehicle for the vio-
lation of some other provision of State law or local ordinance relating
to the operation, ownership, or maintenance of a motor vehicle or any
criminal statute[.]" *Id.* at § 21-64(e).

In issuing the preliminary injunction, which bars enforcement of the
Mobile Phone Ordinance, the trial court concluded that Plaintiff would
suffer "irreparable harm . . . due to the threat of prosecution for violation
of . . . [the] use of a mobile phone while driving [provision], which is a
necessary part of his business." This conclusion is rooted in language
from the Towing Ordinance, which requires: (1) that the towing com-
pany answer or call back within fifteen minutes of receiving any phone
call made to the telephone number that it has posted on certain required
notification signs located in the parking lots; and (2) that the tow truck
operator who removes the vehicle reports by telephone to the Chapel
Hill Police Department (a) the license tag number, (b) a description of
the vehicle, (c) the original location of the vehicle, and (d) its intended
storage location. Chapel Hill, N.C., Code ch. 11, art. XIX, §§ 11-301(a)
(3), 11-305.

Arguing that the trial court erred by addressing the Mobile Phone
Ordinance at all, the Town primarily cites two cases: *Lanier v. Town of
Warsaw*, 226 N.C. 637, 39 S.E.2d 817 (1946) and *Structural Components
Int., Inc. v. City of Charlotte*, 154 N.C. App. 119, 573 S.E.2d 166 (2002).
In *Lanier*, our Supreme Court explained the law regarding the issuance
of permanent injunctions against municipal ordinances as follows:

> It is a general principle of law that injunction does not lie
> to restrain the enforcement of an alleged municipal ordi-
> nance, and ordinarily the validity of such ordinance may
> not be tested by injunction.
>
> However, this principle is subject to the exception that
> equity will enjoin a threatened enforcement of an alleged
> unconstitutional ordinance when it is manifest that other-
> wise property rights or the rights of persons would suffer
> irreparable injury.

*Lanier*, 226 N.C. at 639, 39 S.E.2d at 818 (citations omitted). In *Structural
Components*, we further noted that "[c]hallenges to the constitutionality

of the laws one is charged with violating are best brought within the context of one's own case." *Structural Components*, 154 N.C. App. at 125, 573 S.E.2d at 171.

Relying on those cases, the Town argues that the trial court's order was in error because:

> No actual contested case was before the [trial court because Plaintiff had not been charged with violating the Mobile Phone Ordinance]. . . . There is no threatened enforcement of the [Mobile Phone Ordinance] evidenced in the pleadings. [And t]here is no claim in this case to establish any irreparable injury arising out of the implementation of the [Mobile Phone Ordinance].

The Town also points out that "[Plaintiff] could not be cited under the [Mobile Phone Ordinance] unless he already has been stopped by the police for some other valid reason." Even then, a violation would only "constitute an infraction and subject the offender to a $25.00 penalty. No points or costs could be assessed." *See also* Chapel Hill, N.C., Code ch. 21, art. VII, § 21-64(d). Accordingly, the Town concludes "the constitutionality of this ordinance should be left to be tested . . . when a citation is issued."

In response, Plaintiff argues: (1) that the Mobile Phone Ordinance threatens tow operators' ability to conduct their business, which cannot be done "without the ability to use their cell phones, free from threat of prosecution"; and (2) enforcement of the ordinance would result in "irreparable harm by the inability of [Plaintiff's] drivers to use their cell phones." We disagree.

We find the Town's argument under *Lanier* and *Structural Components* to be persuasive in this case and hold that the trial court erred in concluding that Plaintiff was subject to a manifest threat of irreparable harm through enforcement of the Mobile Phone Ordinance. If Plaintiff wishes to challenge the validity of the Mobile Phone Ordinance, he must do so in the context of his own case. *See id.*

REVERSED.

Chief Judge MARTIN and Judge HUNTER, JR., ROBERT N., concur.