IN THE SUPREME COURT OF NORTH CAROLINA

No. 281PA13

FILED 12 JUNE 2014

GEORGE KING d/b/a GEORGE'S TOWING AND RECOVERY

v.

TOWN OF CHAPEL HILL

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 743 S.E.2d 666 (2013), reversing an order and judgment entered on 9 August 2012 by Judge Orlando F. Hudson, Jr. in Superior Court, Orange County. Heard in the Supreme Court on 17 March 2014.

> *Stark Law Group, PLLC, by Thomas H. Stark and Seth A. Neyhart, for plaintiff-appellant.*
>
> *Ralph D. Karpinos, Attorney for the Town of Chapel Hill; Matthew J. Sullivan, Staff Legal Advisor, Town of Chapel Hill; and Frederick P. Johnson, for defendant-appellee.*
>
> *Kimberly S. Hibbard, General Counsel, and Gregory F. Schwitzgebel III Senior Assistant General Counsel, for North Carolina League of Municipalities, amicus curiae.*

NEWBY, Justice.

In this case we examine the scope of a municipality's power to regulate both the business of towing vehicles parked in private lots and the use of mobile telephones while driving. Municipalities are vested with general police power to regulate or prohibit acts detrimental to their citizens' health, safety, or welfare.

N.C.G.S. § 160A-174 (2013). Even so, that authority is limited in scope, constrained by State and federal laws, as well as by inherent fundamental rights. Because the Town of Chapel Hill exceeded its power to regulate vehicle towing by creating a fee schedule and by prohibiting towing companies from charging credit card fees, and because municipalities are preempted by State law from regulating a driver's use of a mobile phone, we reverse in part the decision of the Court of Appeals.

Following a public hearing that received testimony on "the dangers and difficulties faced by citizens whose vehicles had been towed from private parking lots in Chapel Hill," the Chapel Hill Town Council sought to minimize any adverse effects related to nonconsensual towing and amended its ordinances accordingly. Chapel Hill, N.C., Code ch. 11, art. XIX, [hereinafter Towing Ordinance] §§ 11-300, -301 (2012). The amendments augmented notice and telephone response requirements, changed vehicle release requirements, and added storage and payment requirements. *Id.* §§ 11-301 to -308. Additionally, Chapel Hill enacted provisions authorizing the Town Council to adopt maximum fees for towing vehicles and prohibiting charges for certain services. *Id.* § 11-304. Chapel Hill based these amendments on the power granted to it under N.C.G.S. § 20-219.2 (defining and penalizing wrongful towing from private lots) and N.C.G.S. § 160A-174 (granting a city general ordinance-making power to "prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens"). *Id.* § 11-300.

Meanwhile, the Town Council considered the use of mobile telephones while driving and sought guidance from the Attorney General on the extent of its authority to regulate mobile phone usage. Noting that the General Assembly had already enacted three statutes policing mobile phone usage while driving, the Office of the Attorney General advised that "the regulation of traffic and motor vehicles is primarily a State function." The Attorney General's advisory letter opined that "an ordinance by the Town of Chapel Hill regulating motorists' use of cell phones, is preempted by State law and, therefore, unenforceable." Nonetheless, the Town Council passed an ordinance that prohibited anyone "18 years of age and older" from using a mobile telephone "while operating a motor vehicle in motion on a public street or highway or public vehicular area." Chapel Hill, N.C., Code ch. 21, art. VII, §§ 21-63, -64 (2012) [hereinafter Mobile Phone Ordinance]. The ordinance provided that "[n]o citation for a violation . . . shall be issued unless the officer issuing such citation has cause to stop or arrest the driver [for some other violation]." *Id.* § 21-64(e).

Plaintiff operates a towing business within the town limits of Chapel Hill. Plaintiff contracts with property owners and lessees to remove illegally parked vehicles from private lots used by persons who patronize businesses or live on the premises. The nature of the towing industry requires that plaintiff constantly drive around town to monitor the parking lots from which he has agreed to remove vehicles. The Towing Ordinance requires that plaintiff notify the police department

before he tows a vehicle and that he respond within fifteen minutes to messages left by owners of towed vehicles, causing plaintiff to violate the Mobile Phone Ordinance. While the requirements of the Towing Ordinance substantially increase plaintiff's operating costs, the fee cap limits plaintiff's ability to allocate those costs to those illegally parked. Consequently, plaintiff sought a declaratory judgment to invalidate both ordinances.

Plaintiff claimed that Chapel Hill lacks the authority to enact either the Towing Ordinance or the Mobile Phone Ordinance. According to plaintiff, N.C.G.S. § 20-219.2, one of the statutes undergirding the Towing Ordinance, violates Article II, Section 24(1)(j) of the North Carolina Constitution, which prohibits the General Assembly from enacting any local laws regulating, *inter alia*, labor or trade. Because N.C.G.S. § 20-219.2 states that it only applies to thirteen counties and their municipalities and to four named cities, plaintiff asserted that the statute is an unconstitutional local act. Plaintiff contended that, lacking sufficient enabling legislation, Chapel Hill is without any authority whatsoever to regulate towing. As for the Mobile Phone Ordinance, plaintiff adopted the position of the Attorney General's Office that State law preempts municipal restrictions on mobile phone usage while driving. Plaintiff insisted that several additions to the laws governing motor vehicles evidence the General Assembly's intent to create a statewide, comprehensive regulatory scheme, and thus the Mobile Phone Ordinance is void.

After both parties moved for judgment on the pleadings, the trial court determined that Chapel Hill lacked the authority to enact either ordinance. The trial court found that N.C.G.S. § 20-219.2 is a local law regulating trade in violation of Article II, Section 24(1)(j). Without addressing the Town's general ordinance-making power, the trial court found the Towing Ordinance void for lack of sufficient enabling legislation. Likewise, the trial court determined that the General Assembly had enacted a comprehensive scheme of mobile phone regulation that preempts the Mobile Phone Ordinance, voiding it as well. As a result, the trial court entered a permanent injunction barring enforcement of both the Towing Ordinance and the Mobile Phone Ordinance. The Town appealed.

At the Court of Appeals, Chapel Hill argued, and the Court of Appeals agreed, that the Towing Ordinance fell within the Town's general powers under N.C.G.S. § 160A-174. *King v. Town of Chapel Hill*, ___ N.C. App. ___, ___, 743 S.E.2d 666, 675 (2013). The Court of Appeals specifically chose not to address the constitutionality of N.C.G.S. § 20-219.2. *Id.* at ___, 743 S.E.2d at 675. Under a broad construction of N.C.G.S. § 160A-174, the Court of Appeals determined that "the Towing Ordinance was enacted to protect the citizens of the Town of Chapel Hill and provides a number of beneficial services to those citizens." *Id.* at ___, 743 S.E.2d at 675. In reversing the trial court's order, the Court of Appeals held "that the Towing Ordinance covers a proper subject for regulation under the Town's police

power," *id.* at ___, 743 S.E.2d at 675, and therefore "falls within the purview of section 174(a)," *id.* at ___, 743 S.E.2d at 674.

As for the Mobile Phone Ordinance, the Court of Appeals determined that plaintiff was not entitled to challenge the ordinance because he had not been cited for a violation and because he failed to demonstrate that its enforcement would result in a "manifest threat of irreparable harm." *Id.* at ___, 743 S.E.2d at 676. According to the Court of Appeals, if plaintiff wishes to challenge the validity of the Mobile Phone Ordinance, he must do so as a defense for his violation of the ordinance. *Id.* at ___, 743 S.E.2d at 676-77 (citation omitted).

We allowed plaintiff's petition for discretionary review to consider the scope of Chapel Hill's authority to regulate the towing industry and mobile phone usage. As a mere creation of the legislature, the Town of Chapel Hill has no inherent powers. *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 654, 142 S.E.2d 697, 701 (1965). Accordingly, municipalities are limited to exercising those powers "expressly conferred" or "necessarily implied" from enabling legislation passed by the General Assembly. *Id.*; *see also* N.C. Const. art. VII, § 1 ("The General Assembly . . . may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable."). To ascertain the extent of a legislative grant of power, "we first must look to the plain language of the statutes themselves." *Smith Chapel Baptist Church v. City of Durham*, 350

N.C. 805, 811, 517 S.E.2d 874, 878 (1999) (citation omitted). When the enabling legislation " 'is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.' " *Id.* (quoting *Lemons v. Old Hickory Council, BSA, Inc.*, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988)). But when a statute granting power to a municipality is ambiguous, the enabling legislation "shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect." N.C.G.S. § 160A-4 (2013); *accord Lanvale Props., LLC v. Cnty. of Cabarrus*, 366 N.C. 142, 157, 731 S.E.2d 800, 811 (2012) (stating that N.C.G.S. § 160A-4 does not apply when the enabling legislation is "clear and unambiguous").

Chapel Hill claims that the authority to enact the Towing Ordinance derives from N.C.G.S. § 20-219.2 as well as the general municipal powers imparted by N.C.G.S. § 160A-174. Towing Ordinance § 11-300(b), (c). In designated counties and cities across North Carolina, section 20-219.2 empowers private parking lot owners to remove wrongfully parked vehicles, enacts parking lot signage and notice requirements, and establishes storage lot standards. N.C.G.S. § 20-219.2(a), (a1) (2013). Violation of the statute constitutes an infraction and carries a monetary penalty. *Id.* § 20-219.2(b) (2013). Though N.C.G.S. § 20-219.2 applies only to certain counties and cities, *id.* § 20-219.2(c) (2013), the statute states expressly that it does not preempt local regulation "authorized by general law," *id.* § 20-219.2(d)

(2013). According to plaintiff and the trial court, limiting N.C.G.S. § 20-219.2 to certain counties and cities runs afoul of our constitutional prohibition against local acts regulating labor or trade, N.C. Const. art. II, § 24(1)(j), leaving the Towing Ordinance without sufficient enabling legislation.

It is true that N.C.G.S. § 20-219.2 contains no language generally regarded as enabling legislation. *Compare* N.C.G.S. § 20-219.2, *with id.* § 160A-190 (2013) ("*A city may by ordinance* regulate, restrict, or prohibit the sale, possession or use within the city of pellet guns . . . ." (emphasis added)), *and id.* § 160A-302.1 (2013) ("*The governing body of any city is hereby authorized* to enact an ordinance prohibiting or regulating fishing from any bridge . . . ." (emphasis added)). Rather than being a municipal enabling statute, N.C.G.S. § 20-219.2 regulates conduct by, *inter alia*, permitting the State "to prosecute private citizens who trespass in private parking lots" and regulating the removal of unauthorized vehicles from private lots. *Kirschbaum v. McLaurin Parking Co.*, 188 N.C. App. 782, 787, 656 S.E.2d 683, 686-87 (2008). Because N.C.G.S. § 20-219.2 does not authorize municipal action, we must look elsewhere to determine whether Chapel Hill possesses the power to regulate nonconsensual towing from private lots. Furthermore, because N.C.G.S. § 20-219.2 has no bearing on this analysis, we decline to address the statute's constitutionality. *See High Rock Lake Partners v. N.C. DOT*, 366 N.C. 315, 323, 735 S.E.2d 300, 305 (2012) (noting that we will

decline to address constitutional claims when we base our holding on statutory grounds).

"This Court has long recognized that the police power of the State may be exercised to enact laws, within constitutional limits, 'to protect or promote the health, morals, order, safety, and general welfare of society.'" *Standley v. Town of Woodfin*, 362 N.C. 328, 333, 661 S.E.2d 728, 731 (2008) (quoting *State v. Ballance*, 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949)). The General Assembly has delegated a portion of this power to municipalities through N.C.G.S. § 160A-174. *Id.* Section 160A-174(a) provides that "[a] city may by ordinance define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances." Like the State's police power, N.C.G.S. § 160A-174 is by its very nature ambiguous, and its reach cannot be fully defined in clear and definite terms. *See City of Winston-Salem v. S. Ry. Co.*, 248 N.C. 637, 642-43, 105 S.E.2d 37, 41 (1958) ("Since the police power of the State has not been, and by its nature cannot be, placed within fixed definitive limits, it may be extended or restricted to meet changing conditions, economic as well as social."); Ernst Freund, *The Police Power* § 3, at 3 (1904) ("[An examination of police power] will reveal the police power not as a fixed quantity, but as the expression of social, economic and political conditions. As long as these conditions vary, the police power must continue to be elastic, i.e., capable of development."). Therefore, we are bound to construe N.C.G.S. § 160A-

174 "to include any additional and supplementary powers that are reasonably necessary or expedient to carry [the grant of power] into execution and effect." N.C.G.S. § 160A-4; *see also Lanvale*, 366 N.C. at 157, 731 S.E.2d at 811.

Yet, we are also mindful that "[a]n exertion of the police power inevitably results in a limitation of personal liberty, and legislation in this field 'is justified only on the theory that the social interest is paramount.' " *Ballance*, 229 N.C. at 769, 51 S.E.2d at 734-35 (quoting *State v. Mitchell*, 217 N.C. 244, 250, 7 S.E.2d 567, 571 (1940)). Even a broad construction of N.C.G.S. § 160A-174 does not endow municipalities with omnipotence. Section 160A-174 is limited by individual rights and by the laws and constitutions of the state and federal governments. N.C.G.S. § 160A-174(b). To be sustained as a legitimate exercise of the police power, an ordinance that regulates trades or businesses "must be rationally related to a substantial government purpose." *Treants Ents., Inc., v. Onslow County*, 320 N.C. 776, 778-79, 360 S.E.2d 783, 785 (1987); *see also Ballance*, 229 N.C. at 769, 51 S.E.2d at 735 (noting the uses of the police power "must have a rational, real, or substantial relation to the public health, morals, order, or safety, or the general welfare").

Before turning to the specific provisions of the Towing Ordinance at issue here, we first address whether N.C.G.S. § 160A-174, when construed in accordance with N.C.G.S. § 160A-4, bestows any authority at all on municipalities to regulate

towing from private lots located within their borders. Protection of the real property rights and business interests of those who own or lease parking lots depends on having the ability to remove vehicles parked without permission. On the other hand, the right to remove vehicles collides with the personal property rights of vehicle owners. Towing can leave unknowing drivers without means of transportation and can lead to altercations between vehicle owners and towing personnel. In an urban setting the general power to regulate towing ameliorates these dangers in addition to protecting lot owners' and lessees' property rights by ensuring that parking is available to those lawfully present on the property. Reading N.C.G.S. § 160A-174 broadly, this general authority to regulate nonconsensual towing from private lots flows from municipal power to protect citizen health, safety, or welfare.

Plaintiff's remaining objections to the Towing Ordinance relate to Chapel Hill's notice requirements, fee schedule, and required payment options. We consider each of the challenged portions in turn to determine which, if any of them, constitute a valid exercise of Chapel Hill's general ordinance-making authority.

Plaintiff first argues that the notice and signage requirements exceed the scope of Chapel Hill's power to protect citizen health, safety, or welfare. The Towing Ordinance mandates, *inter alia*, that signs be posted in certain locations around private parking lots, making it clear that the area is a "tow-away zone."

Towing Ordinance § 11-301. Lettering must be at least a certain size on a contrasting background, and the sign itself must be a minimum of twenty-four inches by twenty-four inches. *Id.* § 11-301(a). Chapel Hill asserts that these requirements are intended to ensure that drivers are on notice, to inform car owners of the location of their vehicles, and to prevent conflicts between citizens and tow truck operators. Given the tension between vehicle owners' personal property rights and the right to remove vehicles illegally parked on private property, these provisions appear to be a rational attempt at addressing some of the inherent issues affecting citizen health, safety, or welfare that arise when one's car is involuntarily towed. Construing N.C.G.S. § 160A-174 broadly, we agree that the Town's authority to regulate towing is expansive enough to sustain the notice and signage requirements.

Plaintiff next challenges the fee schedule provision of the Towing Ordinance. According to plaintiff, the fee limit is lower than his actual operating costs and contends this limit on his ability to make a profit exceeds the power granted by N.C.G.S. § 160A-174. Section 11-304 of the Towing Ordinance states, in part, that

> [a]ny towing or storage firm which tows or removes a vehicle pursuant to this article shall not charge the owner or operator of the vehicle in excess of the fees established in the fee schedule adopted annually by the town council. No storage fees shall be charged for the first twenty-four-hour time period from the time the vehicle is initially removed from the private property. The fees referred to herein shall be all inclusive; no additional fees may be charged for the use of particular equipment or services.

. . . .

. . . The fees established by the town council shall be all inclusive. . . . No additional fees may be charged for using dollies, trailers, lifts, slim jims or any other equipment or service.

Towing Ordinance § 11-304.

Unlike the signage and notice provisions, there is no rational relationship between regulating fees and protecting health, safety, or welfare. Further, the fee schedule provision implicates the fundamental right to "earn a livelihood." *Roller v. Allen*, 245 N.C. 516, 518-19, 96 S.E.2d 851, 854 (1957); *see also State v. Harris*, 216 N.C. 746, 759, 6 S.E.2d 854, 863 (1940) ("While many of the rights of man, as declared in the Constitution, contemplate adjustment to social necessities, some of them are not so yielding. Among them the right to earn a living must be regarded as inalienable."). This Court's duty to protect fundamental rights includes preventing arbitrary government actions that interfere with the right to the fruits of one's own labor. N.C. Const. art. I, § 1; *Roller*, 245 N.C. at 525, 96 S.E.2d at 859 ("A state cannot under the guise of protecting the public arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions on them." (citations omitted)).

Despite our expansive reading of N.C.G.S. § 160A-174, we do not believe that statute permits a city or town to create the fee schedule at issue here. The prices that citizens pay for towing are wholly unrelated to the protection of citizen health

or safety, leaving only the question of whether the fee schedule provision falls under the protection of citizen welfare. Allowing Chapel Hill to engage in price setting under the general and undefined rubric of "welfare" could subject other enterprises not only to price setting but also to officious and inappropriate regulation of other aspects of their businesses. Where any relationship between "welfare" and the specific activity sought to be regulated is as attenuated as here, we believe that the more prudent course is for the General Assembly to grant such authority expressly, as it has done in regard to rates that may be charged in other contexts such as, for instance, taxi cabs. N.C.G.S. § 160A-304 (2013).

While Chapel Hill has the general authority to regulate towing, by capping fees, the town inappropriately places the burden of increased costs incident to the regulation solely on towing companies. Accordingly, we hold that Chapel Hill exceeded its authority by imposing a fee schedule for nonconsensual towing from private lots.

Plaintiff further argues that Chapel Hill exceeded its general ordinance-making authority by requiring fees "be payable by cash, debit card and at least two (2) major national credit cards at no extra cost." Towing Ordinance § 11-304(d). "Failure to accept credit or debit cards for payment is a violation of [the Towing Ordinance] and is punishable as a misdemeanor." *Id*. Requiring towing companies to accept credit and debit cards bears a rational relation to a broad interpretation of

citizen safety or welfare by enabling vehicle owners to quickly and easily regain access to their vehicles. N.C.G.S. § 160A-174. The same cannot be said for preventing tow truck operators from passing the cost of accepting credit cards on to those illegally parked. This provision is tantamount to creating a fee cap, which we have already said exceeds Chapel Hill's general authority to regulate nonconsensual towing from private lots.

Having held that the fee schedule and the prohibition on charging credit card fees exceed the power granted by N.C.G.S. § 160A-174, we must now determine whether the remainder of the Towing Ordinance is valid. We will sever a provision of an otherwise valid ordinance when the enacting body would have passed the ordinance absent the offending portion. *Jackson v. Guilford Cnty. Bd. of Adjust.*, 275 N.C. 155, 168, 166 S.E.2d 78, 87 (1969) (" 'The invalidity of one part of a statute [or ordinance] does not nullify the remainder when the parts are separable and the invalid part was not the consideration or inducement for the Legislature [or board of county commissioners] to enact the part that is valid.' When the statute, or ordinance, could be given effect had the invalid portion never been included, it will be given such effect if it is apparent that the legislative body, had it known of the invalidity of the one portion, would have enacted the remainder alone." (alterations in original) (citations omitted)). At oral argument counsel for Chapel Hill acknowledged that certain provisions of the Towing Ordinance are indeed severable. Striking only the fee schedule and credit card fee provisions would not hinder the

overall purpose of the ordinance to "minimize and control the harmful and adverse effects that occur during the non-consensual towing of motor vehicles," Towing Ordinance § 11-300(f), and it is apparent that the Town Council would have enacted the Towing Ordinance even absent the offending provisions. In sum, we strike the fee schedule and credit card fee provisions of the Towing Ordinance, but leave the remainder of the ordinance intact.[1]

We now turn to the Mobile Phone Ordinance and, as an initial matter, consider the Court of Appeals' holding that plaintiff did not have an actionable claim. *King*, ___ N.C. App. at ___, 743 S.E.2d at 676-77. According to the Court of Appeals, because plaintiff had not been cited for violating the ordinance and because plaintiff failed to demonstrate that enforcement of the ordinance would result in "a manifest threat of irreparable harm," he could not challenge the validity of the ordinance. *Id.* at ___, 743 S.E.2d at 676. We disagree and conclude that the ordinance's alleged substantial encumbrance on economic activity constitutes a manifest threat of irreparable harm sufficient to invoke the equity jurisdiction of the Court. *High Point Surplus Co.*, 264 N.C. at 651-53, 142 S.E.2d at 699-700

---

[1] We find unpersuasive the parties' remaining arguments pertaining to N.C.G.S. § 160A-177 (2013) ("The enumeration in this Article or other portions of this Chapter of specific powers to regulate, restrict or prohibit acts, omissions, and conditions shall not be deemed to be exclusive or a limiting factor upon the general authority to adopt ordinances conferred on cities by G.S. 160A-174.") and N.C.G.S. § 160A-194 (2013) ("A city may by ordinance, subject to the general law of the State, regulate and license occupations, businesses, trades, professions, and forms of amusement or entertainment and prohibit those that may be inimical to the public health, welfare, safety, order, or convenience.").

(allowing a merchant to challenge a local ordinance that prohibited Sunday sales of certain goods that constituted "a substantial 'dollar-volume of business' ").

Thus, we now consider whether Chapel Hill exceeded its power by prohibiting all adults from "us[ing] a mobile telephone or any additional technology associated with a mobile telephone while operating a motor vehicle in motion on a public street or highway or public vehicular area." Mobile Phone Ordinance § 21-64(b). Consistent with the Attorney General's advisory letter, plaintiff contends that statewide mobile phone legislation precludes local regulation.

As discussed above, N.C.G.S. § 160A-174 grants cities general ordinance-making power. Local ordinances must, however, be in harmony with State law; whenever the two come into conflict, the former must bow to the latter. *Town of Washington v. Hammond*, 76 N.C. 33, 36 (1877) ("The true principle is that municipal by-laws and ordinances must be in harmony with the general laws of the State, and whenever they come in conflict with the general laws, the by-laws and ordinances must give way."). Cities may not "regulate a field for which a State or federal statute clearly shows a legislative intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation." N.C.G.S. § 160A-174(b)(5). This "need to avoid dual regulation" is generally referred to as preemption. *Craig v. Cnty. of Chatham*, 356 N.C. 40, 44, 565 S.E.2d 172, 175 (2002)

(citation omitted) (concluding that state swine farm regulations preempt local ordinances).

When weighing whether State legislation preempts a particular field, our precedent dictates that we consider whether the General Assembly has expressed "a clear legislative intent to provide such a 'complete and integrated regulatory scheme.' " *Id.* at 45, 565 S.E.2d at 176. As part of this analysis, we initially examine "the spirit of the act[ ] and what the act seeks to accomplish. Where legislative intent is not readily apparent from the act, it is appropriate to look at various related statutes *in pari materia* so as to determine and effectuate the legislative intent." *Id.* at 46, 565 S.E.2d at 176-77 (alteration in original) (citations and internal quotation marks omitted).

At the outset, we note that regulation of highways and roads has generally been the prerogative of the State, not counties and cities. *See Suddreth v. City of Charlotte*, 223 N.C. 630, 631-32, 27 S.E.2d 650, 652 (1943) (noting that "the power to regulate the use of public roads and streets" is "peculiarly and exclusively a legislative prerogative"). Indeed, the General Assembly "has enacted numerous statutes regulating almost every aspect of transportation and travel on the highways," as evidenced by the over 1100 pages devoted to motor vehicle laws in the 2013 edition of the North Carolina General Statutes. *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 176, 381 S.E.2d 445, 447 (1989). Within these sweeping,

statewide provisions, the legislature has, in numerous instances, ceded regulatory power over roadways to municipalities. *E.g.*, N.C.G.S. § 20-115.1(f) (2013) (allowing local regulation of certain tractor trailers); *id*. § 20-169(2)-(4) (2013) (allowing local authorities to, *inter alia*, prohibit "other than one-way traffic upon certain highways," regulate "the use of the highways by processions or assemblages," and regulate "the speed of vehicles on highways in public parks"); *id*. § 20-368 (2013) (stating that "moves [of houses] on streets on the municipal system of streets shall comply with local regulations"). Yet our General Statutes lack any enabling legislation permitting local regulation of mobile phone use while driving.

In contrast, the General Assembly has, on a statewide scale, repeatedly amended our Motor Vehicle Act to reduce the dangers associated with mobile phone usage on roads and highways. Section 20-137.3 states that "no person under the age of 18 years shall operate a motor vehicle on a public street or highway or public vehicular area while using a mobile telephone or any additional technology associated with a mobile telephone while the vehicle is in motion." *Id*. § 20-137.3(b) (2013). Section 20-137.4, titled "Unlawful use of a mobile phone," prohibits using a mobile telephone while operating a school bus. *Id*. § 20-137.4(b) (2013). The most recent amendments, codified at N.C.G.S. § 20-137.4A, broadly prohibit text messaging while driving and operating a commercial vehicle while using a mobile phone or other electronic device. That section prohibits manually entering letters or

text on a mobile phone or reading electronic messages stored in or transmitted to the device while driving. *Id*. § 20-137.4A(a), (a1) (2013).

Interpreted *in pari materia*, these statutes evidence the General Assembly's "intent to provide a complete and integrated regulatory scheme to the exclusion of local regulation." *Id*. § 160A-174(b)(5). Moreover, when the meaning or purpose of a statute is in doubt, we have "previously ruled that the title of a statute may be used as an aid in determining legislative intent." *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000) (citing *Equip. Fin. Corp. v. Scheidt*, 249 N.C. 334, 340, 106 S.E.2d 555, 560 (1959)). While not entirely dispositive, the broadly worded title of N.C.G.S. § 20-137.4—"Unlawful use of a mobile phone"—tends to indicate an expansive intent to regulate, thus precluding municipalities from doing so.

In conclusion, we recognize municipalities' need to protect their citizens, but we are unwilling to construe our General Statutes to give municipalities unfettered power to regulate in the name of health, safety, or welfare, as "[t]here is nothing in government more dangerous to the liberty and rights of the individual than a too ready resort to the police power." *Harris*, 216 N.C. at 763, 6 S.E.2d at 865; *see also Mitchell*, 217 N.C. at 250, 7 S.E.2d at 571 ("Whenever the police power is invoked there is a resulting delimitation of personal liberty."). Under a broad reading of Chapel Hill's ordinance-making power, we hold that the Town is generally

permitted to regulate vehicle towing and that it acted within its authority by enacting signage, notice, and payment requirements for towing from private lots. Even construing Chapel Hill's powers broadly, however, we hold that the Town exceeded those powers by imposing a fee schedule and prohibiting towing companies from charging credit card fees. Additionally, we hold that the legislature's comprehensive scheme regulating mobile telephone usage on our streets and highways precludes municipalities from intruding into this sphere wholly occupied by the State. Accordingly, the decision of the Court of Appeals reversing the trial court's issuance of a permanent injunction barring enforcement of both ordinances is reversed in part and affirmed in part. This matter is remanded to the Court of Appeals for further remand to the Superior Court, Orange County, for proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.